RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0215P (6th Cir.)
File Name: 03a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DONALD MALLETT,
      *Petitioner/Defendant-*
            *Appellant,*

      *v.*

UNITED STATES OF AMERICA,
      *Respondent/Plaintiff-*
            *Appellee.*

Nos. 01-3518/3845

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 99-00952; 95-00392—Kathleen McDonald
O'Malley, District Judge.

Argued: March 12, 2003

Decided and Filed: July 1, 2003

Before: NELSON, COLE, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Mark R. DeVan, BERKMAN, GORDON, MURRAY & DeVan, Cleveland, Ohio, for Appellant. Phillip J. Tripi, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Mark R. DeVan, Steven D.

Shafron, B. Jessie Hill, Heather L. Tonsing, BERKMAN, GORDON, MURRAY & DeVAN, Cleveland, Ohio, for Appellant. Phillip J. Tripi, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

COLE, J., announced the judgment of the court and delivered an opinion, in which NELSON and GILMAN, JJ., concurred except as to Part III. GILMAN, J. (pp. 19-23), delivered a separate opinion, in which NELSON, J., concurred, which constitutes the opinion of the court on the issue addressed in Part III.

———————————

## OPINION

———————————

R. GUY COLE, JR., Circuit Judge. Defendant Donald Mallett appeals: (1) the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence based on his claim of ineffective assistance of counsel at trial (Case No. 01-3518), and (2) the district court's sentencing of Defendant as a career offender under § 4B1.1 of the United States Sentencing Guidelines (Case No. 01-3845). For the reasons discussed herein, we **AFFIRM** the district court's denial of Mallett's motion to vacate in Case No. 01-3518, and **AFFIRM** the sentence imposed in Case No. 01-3845.

## I.

On October 6, 1995, Mallett was arrested after law enforcement officers executed a search warrant in the home of Mallett's mother in Cleveland, Ohio. When the search warrant was executed, an FBI agent found Mallett exiting an upstairs bedroom. The agent asked Mallett if there were any weapons in the vicinity, and Mallett indicated that there was a firearm in the headboard compartment of the bed. The agent found a Llama 9 mm. semi-automatic pistol in the headboard and an Intratect 9 mm. Lugar firearm in a drawer under the bed. Agents also seized 19.45 grams of cocaine base from a coat pocket in the closet of the bedroom, $2,773

in cash, and several poster-sized photographs of Mallett holding cash and a cellular phone. In addition, agents located two .22 caliber rifles in another bedroom. On October 31, 1995, a federal grand jury in the Northern District of Ohio returned an indictment charging Mallett with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Upon the government's motion, the district court dismissed the § 924(c) count in January 1996.

On January 19, 1996, after a two-day trial, a jury convicted Mallett of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), and being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). After this Court affirmed his conviction and sentence on direct appeal, *see United States v. Mallett*, 134 F.3d 373 (6th Cir. 1997), Mallett filed in the district court a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his motion, Mallett alleged, *inter alia*, that (1) his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment because counsel failed to investigate and raise potential defenses based on incompetency to stand trial and diminished capacity, and (2) the district court improperly sentenced him as an armed career criminal under 18 U.S.C. § 924(e).

The district court granted Mallett's motion as to the sentencing issue only. The district court ordered a sentencing hearing and subsequently re-sentenced Mallett. Mallett now appeals this sentence in Case No. 01-3845, arguing that the district court erred in designating him as a career offender under U.S.S.G. § 4B1.1.

The district court issued a certificate of appealability with respect to certain issues presented by Mallett's ineffective assistance of counsel claim. In Case No. 01-3518, Mallett appeals the district court's denial of relief based on his ineffective assistance of counsel claim.

## II. Case No. 01-3518–Ineffective Assistance of Counsel

### A. Background

Prior to Mallett's original sentencing for his 1996 conviction, the probation officer who prepared Mallett's Presentence Investigation Report recommended that Mallett undergo a psychological evaluation. Trial counsel filed a motion for a psychological evaluation of Mallett, which the district court granted. Psychologist David Pincus conducted this examination and submitted a report to the district court on June 18, 1996.

Dr. Pincus's report indicated that Mallett sustained a severe brain injury in 1987 when he was struck by a car while riding a motorcycle. Mallett suffered a large right subdural hematoma and a contusion to the right lobe of the brain.

Dr. Pincus's report described Mallett as a man with limited intelligence and impaired cognitive function, who cannot integrate information effectively:

> He is a man with limited intelligence who is oriented, not psychotic, not depressed, has a paranoid tendency and who has some passive dependent character features. His cognitive functions are impaired in a manner that implicate injury to right temporal areas of the brain, and contra lateral left frontal and parietal-occipital regions of the brain. . . . [he] has a biologically based vulnerability that is significant and his thinking is profoundly affected in some areas. The deficits in executive functions make it difficult for him to plan, organize and learn from his behavior effectively.

Dr. Pincus concluded that the head injury significantly impaired Mallett's decision-making process, cognitive reasoning and judgments, and may have contributed to his criminal behavior. The report also noted that if Mallett "already had dependent tendencies in his character, having this sort of brain dysfunction would make him more

dependent upon others, and very pliable under the influence of others."

A revised Presentence Investigation Report that incorporated Dr. Pincus's evaluation was submitted to the district court. Based on Dr. Pincus's report, the trial judge granted a downward departure of seven levels because of Mallett's "significantly reduced mental capacity," pursuant to U.S.S.G. § 5K2.13, p.s.

On August 13, 1996, Mallett filed a notice of appeal, *pro se*, to this Court. On August 19, 1996, Mallett's new counsel filed a Motion for New Trial in the district court, based on the newly discovered evidence of Dr. Pincus's report. In this motion, Mallett argued that Dr. Pincus's report raised issues as to whether Mallett was competent to stand trial, whether Mallett was capable of forming the requisite intent to commit the offenses charged in the indictment, and whether Mallett was competent to be sentenced. On September 12, 1996, Mallett filed in the district court a Motion for Order allowing an interview of Dr. Pincus, and for compensation for Dr. Pincus's additional expert service. Since his appeal was pending in this Court, however, the district court lacked jurisdiction to rule on these motions.

In his direct appeal before this Court, Mallett raised the issue of ineffective assistance of counsel at trial. This Court declined to rule on the issue because the record was not fully developed.

## B.  § 2255 Proceedings

### 1.  Mallett's Motion to Vacate

In his § 2255 motion, Mallett alleges that his trial counsel was constitutionally ineffective for failing to investigate the possibility that he was incompetent to stand trial. A criminal defendant may not be tried unless he is competent. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Gall v. Parker*, 231 F.3d 265, 284 (6th Cir. 2000); *see also* 18 U.S.C. § 4241(d) (stating that a defendant is incompetent to stand

trial if a court finds "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense . . ."). The test for a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999).

Mallett alleges that several factors should have led his trial counsel to investigate whether he was competent to stand trial. He argues that the information in Dr. Pincus's report indicating Mallett's impaired cognitive functioning should have led trial counsel to question his competency. In addition, Mallett contends that his behavior should have put counsel on notice that his competency was an issue. Mallett specifically cites his "confused request" for new counsel on the eve of trial and confused statements that he made at a hearing held after this request. He also points to rambling and confused statements that he made during his first sentencing hearing. According to Mallett, Dr. Pincus's report and his behavior demonstrate his inability to grasp the nature of the events taking place around him. He alleges that his confusion and failure to understand what was happening made it unlikely that he was able to assist effectively in his own defense.

In requesting a psychological evaluation of Mallett, trial counsel stated that "numerous conversations" between himself and Mallett led him to conclude that Mallett's brain injuries might be of interest to the court. Trial counsel did not, however, investigate the possibility that Mallett was incompetent to stand trial. Nor did counsel request a competency hearing, though he could have moved for such a hearing "[a]t any time after the commencement of [the]

prosecution . . . and prior to the sentencing of the defendant." 18 U.S.C. § 4241(a).

Mallett also alleges that trial counsel was ineffective in failing to investigate and raise a diminished capacity defense. The diminished capacity defense "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998) (quoting *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988)). Evidence of diminished capacity is available to negate the mens rea of a specific intent crime such as possession with the intent to distribute. *Id.* at 650.

Mallett contends that evidence of his mental and cognitive defects would have been admissible to show that he was unable to form the specific intent required to be found guilty of possessing drugs with intent to distribute. Mallett's trial counsel never sought psychological evaluations nor filed the appropriate motions for competency evaluations. Therefore, Mallett argues, his counsel's performance was constitutionally ineffective.

### 2.   The District Court's Decision

The district court denied relief based on Mallett's ineffective assistance claims. For several reasons, the district court found it reasonable for counsel not to dispute Mallett's arrest competency to stand trial or to raise a diminished capacity defense. The court stated that, based on a careful review of Dr. Pincus's report at the time of the sentencing hearing and the "ample opportunity the Court had to observe Mallett's behavior during trial," it had determined that "Mallett could *not* show that he was incompetent to stand trial, or that he lacked the mental capacity to form the intent necessary to be convicted of the crime with which he was charged."

The district court explained that its decision to apply a downward departure under the Guidelines was very close, "rendering a decision on whether or not Mallett was competent to stand trial, with a much lower standard, not

close at all." According to the district court, "Mallett, numerous times, showed that he understood the nature of the proceedings against him and that he was participating vigorously in his defense." For example, "[d]uring a pre-trial hearing, Mallett fluently explained his factual understanding of the proceedings against him" and also stated that he understood the concept that the court's denial of his motion to suppress evidence did not necessarily mean that Mallett would be found guilty of the crimes charged. And, while Mallett argues that his colloquies with the court during his sentencing hearing demonstrate his confusion and lack of comprehension of the proceedings, the district court found otherwise:

> Based on these colloquies with the Court, it is clear that Mallett both had a rational factual understanding of the proceedings against him, and was participating in his own defense, to the point where he understood the nature of the search warrant against him, and had pored over it to determine whether it contained any errors that could result in dismissal.

Furthermore, the district court determined it was reasonable for Mallett's counsel not to raised a diminished capacity defense because "Mallett had not shown that he was unable to form the intent to commit the crime of trafficking in drugs by his behavior with his attorney or with this Court during the course of the proceedings." The facts surrounding his arrest and prior history of selling cocaine also did not provide evidence that he was unable to form the necessary intent.

Moreover, even if Mallett's attorney had thought that his mental competency was an issue, the district court found several strategic reasons not to pursue this line of defense:

> If Mallett's counsel had asserted an insanity defense, the government likely would have been able, not only to put all of Mallett's prior convictions for selling crack cocaine into evidence, but to delve into the circumstances involved in each of those prior convictions. Each of those convictions took place after Mallett's brain injury,

and may have been used to show that Mallett had sold drugs in the past with full knowledge of not only what he was doing, but of the consequences of doing so under the law. The government also may have been able to put on evidence of Mallett's knowledge of drugs, and how to make money from selling drugs, that would have been otherwise irrelevant. As this is an issue of trial strategy, and one with large consequences no matter which strategy is chosen, the attorney is given great leeway under *Strickland* to make a reasonable choice.

The district court also denied Mallett's motion for an order allowing an interview of Dr. Pincus, as the court did "not perceive that Dr. Pincus's report provides any evidence of Mallett's incompetence or inability to form intent."

## C.   Discussion

### 1.   Standard of Review

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

We review *de novo* a district court's denial of a § 2255 motion, and examine a district court's factual findings for clear error. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). Ineffective assistance of counsel claims are mixed questions of law and fact, which we review *de novo* on appeal. *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).

### 2.   Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show that: (1) his trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687; *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002). The first prong of this test requires Mallett to show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. This standard is highly deferential, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Under the second prong, Mallett must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Counsel's performance must have so "undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The reviewing court must determine if the proceeding was "fundamentally unfair or unreliable; a court should not focus the analysis on the outcome." *Kinnard*, 313 F.3d at 935.

Courts are not required to conduct an analysis under both prongs of the inquiry. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697; *see also Kinnard*, 313 F.3d at 935.

We find that Mallett's claim fails for lack of prejudice. First, Mallett has not demonstrated a reasonable probability that a challenge to Mallett's competency to stand trial would have changed the outcome of the proceedings. Nothing in Dr. Pincus's report indicates that Mallett was incompetent to stand trial. Furthermore, after observing Mallett throughout the proceedings, the district court determined that Mallett was indeed competent to stand trial. The district court made clear that, based on its opportunity to observe and communicate

with the defendant, the incompetency question was not even close.

Mallett raises several objections to the trial court's conclusion, none of which leads us to question whether the results of the proceedings were reliable. *See Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1995). First, Mallett argues that the district court's observations do not substitute for a competency hearing. The key point, however, which is dispositive of this claim, is that Mallett has failed to demonstrate a reasonable probability that the court would have found him incompetent. In addition, Mallett contends that Dr. Pincus's report does not address whether Mallett was competent to stand trial, and therefore it is possible that a psychological evaluation would provide evidence of incompetency. It is Mallett's burden, however, to demonstrate prejudice, *see Thompson v. Bell*, 315 F.3d 566, 592 (6th Cir. 2003); *Martin v. Mitchell*, 280 F.3d 594, 614-15 (6th Cir. 2002), and here this burden has not been met.

Mallett also argues that the district court only determined that Mallett had a factual understanding of the proceedings. To be competent, one also must have a rational understanding of the proceedings against him. *See Lafferty v. Cook*, 949 F.2d 1546, 1551 (10th Cir. 1991) (stating that "sufficient contact with reality [is] the touchstone for ascertaining the existence of a rational understanding"); *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir. 1990); *see also United States v. Parks*, 198 F.3d 248, at *2-4 (6th Cir. 1999) (per curiam) (table). We reject the argument that the district court failed to consider whether Mallett had a rational understanding of the proceedings against him. The district court correctly described the test for competency, and reached the reasoned conclusion, based on its contact with and observation of the defendant, that the standard had not be met.

Likewise, Mallett has failed to demonstrate any prejudice resulting from counsel's alleged failure to investigate a diminished capacity defense. Dr. Pincus's report does not suggest that Mallett was unable to form the specific intent to

distribute drugs. Furthermore, as the district court found, it is unlikely that Mallett would have benefitted from raising such a defense:

> If Mallett's counsel were to attempt to prove that Mallett was unable to form the necessary intent to commit the crimes with which he was charged, much damaging information, that would be otherwise irrelevant, may be allowed into evidence to show that Mallett was capable of forming intent. With the existence of that evidence, including a prior conviction in which Mallett was caught selling crack cocaine to an informant, the Court does not believe Mallett would have much success with this defense, nor that it would produce a result differing from his prior guilty verdict at a new trial.

Mallett has failed to demonstrate a reasonable probability that, but for counsel's alleged errors, the result of his proceedings would have been different. Accordingly, we **AFFIRM** the district court's denial of Mallett's motion on grounds of alleged ineffective assistance of counsel.

### III.  Case No. 01-3845–Alleged Sentencing Error

#### A.  Background

In his motion to vacate, Mallett challenged his 1996 conviction, arguing that it violated federal law to sentence him under § 924(e) because his three prior state convictions did not qualify as "serious drug offenses" under the statute. The district court granted Mallett relief on this ground after determining that, under *United States v. Morton*, 17 F.3d 911 (6th Cir. 1994), Mallett's prior state convictions could not serve as predicate offenses under § 924(e).

In *Morton*, we held that § 924(e)(2)(A)(ii), which defines a "serious drug offense" as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more is prescribed by law," was ambiguous as to whether a federal court should consider the maximum penalty under state law at the time of the prior conviction or the maximum penalty

under state law at the time of federal sentencing. 17 F.3d at 915. The defendant in *Morton* was convicted under 18 U.S.C. § 922(g)(1) and received a fifteen-year sentence pursuant to the mandatory minimum for a defendant with three prior convictions for serious drug offenses, *see* § 924(e)(1). *Morton*, 17 F.3d at 914. At the time of his state court sentencing, the defendant had five state convictions, each of which carried a minimum sentence of more than ten years. Before his federal sentencing, Tennessee amended its laws so that the defendant could not have received more than six years for two of his prior state convictions. The defendant argued that his prior convictions were not "serious drug offenses" because the statute did not specify whether courts should consider the penalty for a prior offense as of the time of the prior sentencing or at the time of the later sentencing in federal court. Noting that § 924(e)(2)(A)(ii) leaves the standard by which to judge the seriousness of a state drug conviction to state policy, we found the statute "at least ambiguous" as to when to determine the penalty under state law. We therefore relied on the rule of lenity, which counsels that, in construing an ambiguous statute, a court should resolve the ambiguity in favor of the more lenient sentence, and ruled in the defendant's favor, holding that the two state convictions could not be counted as predicate offenses to invoke the enhanced sentencing provision. *Id.* at 915.

Before Mallett's federal sentence was imposed, Ohio changed its sentencing scheme. Although Mallett's original state drug trafficking convictions were each subject to possible ten-year sentences and, consequently, "serious drug offenses" under § 924(e), under the new scheme, those convictions were not subject to ten-year sentences. Therefore, under *Morton*, Mallett was improperly sentenced as an armed career criminal. On this ground, the district court vacated Mallett's sentence and announced that the court would conduct a new sentencing hearing.

At his re-sentencing hearing, Mallett argued that this Court's reasoning in *Morton* concerning the rule of lenity also should apply to U.S.S.G. § 4B1.1, the career offender

provision, and, due to revisions in Ohio law, his prior state convictions did not qualify as prior felony convictions for controlled substance offenses. Mallett pled guilty to drug trafficking as a third-degree felony three times. First, after Mallett was caught with a bag containing twenty-one rocks of crack cocaine, he pled guilty to violating Ohio Revised Code § 2925.03(A)(2) (repealed eff. July 1, 1996), which provided that "No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another." On separate occasions thereafter, Mallett was caught selling one rock of cocaine and three rocks of cocaine. In both instances, Mallett pled guilty to violating former Ohio Revised Code § 2925.03(A)(1), which provided that "No person shall knowingly sell or offer to sell a controlled substance in an amount less than the minimum bulk amount." Under the statutory provision in effect at the time, "bulk amount" was measured either by weight in grams or by unit dose.

In 1996, Ohio revised its sentencing provisions for drug offenders. In particular, the Ohio legislature deleted the terms "bulk amount" and "unit dose," so that the degree of an Ohio felony drug offense is now determined by the weight in grams of the drugs that a defendant sells or possesses. Because the weight of the drugs which Mallett was charged with having sold or possessed was measured in bulk, it is not clear how Mallett would be charged, or the term of imprisonment to which he would be subject, under the current statutory provisions. It is clear, however, that Mallett's prior state convictions would not qualify as "controlled substance offenses" under U.S.S.G. § 4B1.1 if the drugs with which he was charged with selling or possessing weighed less than one gram on each occasion. If a defendant is charged with trafficking one gram or less of crack cocaine, it is a fifth degree penalty, subject to a maximum term of imprisonment of one year. OHIO REV. CODE §§ 2925.03(C)(4)(a), 2929.14. Mallett contends that, absent any indication in the record as to the actual weight in grams, a federal court must presume

that the drugs involved in those offenses weighed less than one gram.

The district court rejected Mallett's argument that *Morton* applied to the career offender provision of the Guidelines, and sentenced him as a career offender. Mallett now appeals this sentence, relying on *Morton* to argue that § 4B1.1 is ambiguous as to whether courts should consider the maximum term of imprisonment for a prior offense at the time of the state conviction or at the time of federal sentencing. Mallett contends that this Court's application of the rule of lenity to similar statutory language in § 924(e) requires us to apply the rule of lenity in this case.

## B. Standard of Review

We review *de novo* questions involving the interpretation of the Sentencing Guidelines. *United States v. Robertson*, 260 F.3d 500, 506 (6th Cir. 2001); *United States v. Dolt*, 27 F.3d 235, 237 (6th Cir. 1994) (reviewing *de novo* the district court's determination that defendant is a career offender under the Sentencing Guidelines).

## C. Discussion

U.S.S.G. § 4B1.1 provides that a defendant is a career offender if (1) he was at least eighteen when he committed the offense of conviction; (2) the offense of conviction is a felony that is a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of crimes of violence or controlled substance offenses. A "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2 (defining terms used in § 4B1.1). Mallett argues that the same ambiguity that this Court recognized in *Morton* inheres in U.S.S.G. § 4B1.1 because this Guideline, like § 924(e), says nothing about the time at which the penalty

for state law convictions is to be examined – as of the time of the previous state conviction or as of the time of federal sentencing. I would agree that our decision in *Morton* controls this case.

Title 18 U.S.C. § 924(e) defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). In *Morton*, we held that this language was ambiguous as to the relevant time that a term of imprisonment is prescribed by law. Guideline § 4B1.2 states a "controlled substance offense" is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." The Guidelines are just as ambiguous as § 924(e) with respect to when the penalty for the state conviction should be examined. Nothing in the relevant language clarifies § 4B1.1 in a manner that eliminates this ambiguity as to whether the penalty at the time of state sentencing or the later federal sentencing controls for the purpose of determining whether a conviction qualifies as a controlled substance offense and thus triggers the sentence enhancement for career offenders. In *Morton*, we applied the rule of lenity to language that is materially indistinguishable from the language of the Guidelines. This Court also applies the rule of lenity to matters relating to the Guidelines, *United States v. Boucha*, 236 F.3d 768, 776 (6th Cir. 2001), and I would find it appropriate to do so here.

Because nothing in the Guidelines distinguishes this case from *Morton*, I would find that we are bound by this Court's prior holding that such language is ambiguous and that the rule of lenity applies.

The majority concedes that the Guidelines contain the same language that this Court held to be ambiguous in *Morton*. Nonetheless, the majority finds the instant case distinguishable because: (1) it is unclear how Mallett would be sentenced under Ohio's revised drug laws; and (2) in light of § 4B1.2(c), § 4B1.2(b) is sufficiently clear that the classification of a controlled substance offense as a felony or a misdemeanor is to be determined as of the date that the defendant's guilt of the offense was established. I am unpersuaded by the majority's attempt to distinguish this case from *Morton*. First, I disagree with the majority's view that, because the facts make this a difficult case, *Morton* should not apply. We apply the rule of lenity after determining that the language of a statute or Guideline is ambiguous. *See United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) ("If the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants."). This determination should not and cannot hinge on the particular facts in each case. The difficulty that a district court would face in establishing the state law penalty at the time of federal sentencing does not relate to the existence of ambiguity in the governing statute. In addition, I find problematic the majority's conclusion that this case is distinguishable because it is unclear how Mallett would be sentenced under current Ohio law because this conclusion creates uncertainty as to how *Morton* applies in cases arising under § 924 in which the record is deficient.

Second, I do not think that § 4B1.2(c) eliminates any ambiguity in the language of the Guidelines--which the majority concedes is the same language that the *Morton* court found ambiguous in §924. Section 4B1.2(c) states: "The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere." This speaks only to the date of conviction, which is not at issue in this case. Indeed, the ambiguity present here is whether the state law penalty should be determined as of the date of conviction or as of the date of federal sentencing; merely defining the

"date that a defendant sustained a conviction" does nothing to answer this question. Section 4B1.2(c) does not suggest that the classification should be determined as of the date that the defendant's guilt was established. The Guidelines are silent on this issue.

Because I believe that *Morton* controls the issue in this case, in my view, the rule of lenity requires us to interpret § 4B1.1 in favor of the more lenient sentence and, therefore, to hold that the penalty at the time of federal sentencing controls. Accordingly, I would vacate the sentence imposed by the district court, and remand for re-sentencing.

### Conclusion

For the reasons stated above, we **AFFIRM** the district court's denial of relief in Case No. 01-3518, and **AFFIRM** the sentence imposed by the district court in Case No. 01-3845.

---

**PARTIAL MAJORITY OPINION**

---

RONALD LEE GILMAN, Circuit Judge. I agree with all aspects of the lead opinion except for Part III, which concerns the sentencing of Mallett as a career offender under § 4B1.1 of the United States Sentencing Guidelines. Although this court's prior decision in *United States v. Morton*, 17 F.3d 911 (6th Cir. 1994), is entitled to full deference, I do not believe that *Morton* is controlling on the facts of this case. Two important points that distinguish the instant case from *Morton* cause me to conclude that the judgment of the district court with respect to Mallett's sentence should be affirmed.

To begin with, I acknowledge that § 4B1.2 of the United States Sentencing Guidelines, which defines the terms found in § 4B1.1, contains the same language that the *Morton* court found ambiguous in 18 U.S.C. § 924. The first point that distinguishes our case from *Morton*, however, is that Tennessee had simply reduced the punishment applicable to offenses involving a particular quantity of cocaine prior to Morton's federal sentencing. This left the district court with no doubt that Morton's state convictions were no longer classified as triggering offenses at the time that he was to be sentenced in federal court for a federal firearms charge. Ohio, in contrast, has altered how drug quantities are measured (from "unit dose amount" to grams), with no system of conversion provided. Perhaps the weight of the drugs involved in Mallett's prior state-court convictions would make his offenses punishable by more than one year in prison under Ohio's new laws, or perhaps not. The record does not provide an answer. As the district court noted: "It is difficult to discern exactly how Mallett would be sentenced under the Ohio drug sentencing provisions that were in effect at the time he was sentenced in federal court."

To determine how Mallett would now be sentenced under Ohio's revised drug laws would therefore require a factfinding inquiry into how many grams of cocaine were involved in his prior offenses. The Supreme Court, however, has discouraged us from reexamining state-court convictions in § 2255 proceedings because district courts are ill-equipped "to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records." *Daniels v. United States*, 532 U.S. 374, 378 (2001). Similarly, this court has sought to resolve ambiguities in the Sentencing Guidelines without resorting to fact-intensive examinations of prior convictions. *E.g., United States v. Bass*, 315 F.3d 561, 566 (6th Cir. 2002) (affirming "the district court's finding that [the defendant's] prior conviction was for a crime [of] violence, since that determination can be reached from the record without having to examine the detailed facts of his offense"), *cert. denied*, 123 S. Ct. 1373 (2003).

Where a state has amended its drug laws after a defendant's state-court conviction but prior to his or her federal-court sentencing, so that the offense for which the defendant had been convicted no longer exists and no conversion between the former and amended statutes is facially apparent, the disinclination to scrutinize the facts of prior state-court convictions militates in favor of determining the classification of the controlled-substance offense as of the time of the state-court conviction. When the original sentence is imposed, there is no problem determining the maximum term of imprisonment for that offense. Such a determination is no longer possible at the time of sentencing in federal court, however, unless the state-court indictment or jury instructions contain the information that would enable the district court to determine the punishment that would apply to the defendant's conviction under the amended state laws. *Cf. id.* at 565 ("[W]hen it is not clear from the elements of the offense alone whether the crime involved a serious risk of potential injury to another, the sentencing court may review the indictment for the specific conduct charged.").

The Fifth Circuit employed similar reasoning when faced with a situation in which the district court would have needed to consider a police report to ascertain how the defendant

would have been sentenced under Texas's revised drug laws. Noting that Supreme Court precedent discouraged district courts from looking beyond the statutory definition, charging papers, and jury instructions for a prior offense, the court held:

> Since the permitted inquiry does not provide us the information with which to classify [the defendant's] 1989 drug offense under the current Texas statutory classifications, we need not decide whether to follow the Sixth Circuit's decision applying the rule of lenity in *Morton*. Further, this circumstance leaves us with no option but to retain the classification of [the defendant's] drug offense under the statute in effect at the time of his conviction which clearly qualifies as a serious drug offense.

*United States v. Allen*, 282 F.3d 339, 343 (5th Cir. 2002).

Mallett concedes that "[n]one of the [prior state-court] offenses was charged in terms of weight; all were charged under the now eliminated unit dose provision, and none of the indictments contained a notation, an allegation or specification, as to the weight of the drugs." Accordingly, unlike the situation in *Morton*, there is no way to determine from the record how Mallett would now be sentenced under Ohio's revised drug laws. Because the district court should not engage in an examination of the conduct involved in a prior conviction beyond looking at the indictment or jury instructions, the only way it could determine whether Mallett's prior convictions were controlled-substance offenses was to evaluate them as of his conviction in state court.

The second point that distinguishes *Morton* from the instant case is that in *Morton* the ambiguous language appeared in the text of 18 U.S.C. § 924(e)(2)(A)(ii), whereas the language here appears in § 4B1.2 of the United States Sentencing Guidelines. Unlike § 924, the Guideline provides the following instruction as to the date that the sentencing court should use for matters relating to a defendant's prior convictions: "The date that a defendant sustained a conviction

shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." U.S. Sentencing Guidelines Manual § 4B1.2(c) (2000).

Although this instruction does not flatly state that the classification of a controlled-substance offense as a felony is to be determined as of the date that the guilt of the defendant was established, that is the most logical inference to draw. Indeed, the Fourth Circuit has held that § 4B1.2(c) settles the matter. *United States v. Johnson*, 114 F.3d 435, 445 (4th Cir. 1997) (rejecting the defendant's contention that he was not subject to the career-offender enhancement because his prior conviction was no longer a felony under North Carolina's revised criminal statute, and stating that "[a]s for the date of the conviction, § 4B1.2(3) of the guidelines provides that the conviction is sustained on the date the guilt of the defendant is established"). This court has followed *Johnson* in an unpublished opinion. *Nelms v. United States*, No. 02-3398, 2003 WL 344328, at *1 (6th Cir. Feb. 7, 2003) (holding that the defendant was properly classified as a career offender under the Sentencing Guidelines because his "predicate convictions . . . were felonies at the time he was convicted of those crimes," despite the fact that "at the time of [federal] sentencing, the predicate offenses could have been prosecuted as misdemeanors under [state] law"). I thus disagree with the lead opinion's statement that "[b]ecause nothing in the Guidelines distinguishes this case from *Morton*, . . . we are bound by this Court's prior holding that such language is ambiguous and that the rule of lenity applies." (Lead Op. at 16)

Section 4B1.2(c), at the very least, renders implausible an interpretation of § 4B1.2(b) that would classify a state-court conviction as a felony or a misdemeanor as of any time other than the date on which the defendant's guilt is established. This implausibility substantially weakens the argument for applying the rule of lenity to the facts of this case. As this court has noted:

Although we do apply the rule of lenity to matters relating to the sentencing guidelines, and, indeed, have not hesitated in the past to apply the rule to decisions regarding criminal sanctions, the rule of lenity is generally inapplicable unless, after a court has seized on every thing from which aid can be derived, it is still left with an ambiguity.

*United States v. Hudspeth*, 208 F.3d 537, 539 (6th Cir. 2000) (citations, alterations, and internal quotation marks omitted).

A statute or Sentencing Guideline is not "'ambiguous' for purposes of lenity merely because it [is] *possible* to articulate a construction more narrow than that urged by the Government." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (emphasis in original); *see also Taylor v. United States*, 495 U.S. 575, 596 (1990) (explaining that the rule of lenity "cannot dictate an implausible interpretation of a statute"). In light of § 4B1.2(c), I believe that § 4B1.2(b) is sufficiently clear that the classification of a controlled-substance offense as a felony or a misdemeanor is to be determined as of the date that the defendant's guilt of the offense was established.

Two independent points thus distinguish this case from *Morton* and lead me to conclude that the classification of Mallett's controlled-substance offenses as felonies must be determined as of the date that his guilt of those crimes was established. First, the intervening change in Ohio's drug-sentencing law provides no guidance as to how Mallett's offense would currently be classified. Whether his state controlled-substance convictions would be classified as felonies as of the time of his federal sentencing, therefore, cannot readily be evaluated. Second, § 4B1.2(c) strongly suggests that, under the Sentencing Guidelines, the classification of a controlled-substance offense as a felony should be determined as of the date that the defendant's guilt of that offense was established, not as of the time of his federal sentencing. I am therefore of the opinion that Mallett's sentence should be affirmed.