**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0137n.06
Filed: February 20, 2007

**No. 05-1825**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Malcolm Butler, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Paul Renico, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    SUHRHEINRICH, SUTTON, and MCKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.**  Petitioner Malcolm Butler appeals the district court's denial of Petitioner's application for habeas relief.  Petitioner was convicted in Michigan state court of first-degree murder and possession of a firearm during the commission of a felony.  On appeal, Petitioner argues that he is entitled to habeas relief because (1) the prosecutor withheld exculpatory identification evidence, and (2) his counsel was ineffective for (a) failing to move pretrial to suppress in-court identifications of Petitioner; (b) failing to move for a mistrial when the withheld evidence was first introduced at trial; and (c) failing to move for a mistrial when purportedly newly discovered evidence came to light during jury deliberations.  For the reasons stated below, we AFFIRM the order of the district court.

**I.  BACKGROUND**

On February 17, 2000, Petitioner was convicted in Michigan state court of first-degree murder, in violation of Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b. The convictions arose out of a carjacking in which Jadeison (Jay) Ladouceur was fatally shot in Detroit, Michigan, on May 14, 1999. The district court quoted the Michigan Court of Appeals regarding the evidence at trial:

> [Jay] Ladouceur was killed . . . while he was washing his 1996 Chevy Impala. Several eyewitnesses testified that [Petitioner] struggled with Jay for the car and shot Jay in the head. [Petitioner] dragged Jay's body out of the car and drove away in the Impala. Witnesses testified that [Petitioner] was Jay's only assailant. There was evidence that [Petitioner] had been driving a brown car that was left at the scene of the shooting, and that he took the tires from the Impala to the house of his cousin, Clee Jackson, where they were later recovered by the police. There was also evidence that [Petitioner] carried a gun, that he told his cousin that he had shot someone, and that he was seen with blood on his clothing after the shooting.

JA at 209-10.

Petitioner's primary defense was that he was mistakenly identified and that Clee Jackson was actually the shooter. In support of this claim, Petitioner pointed to the facts that Clee Jackson more closely fit the description of the perpetrator, evidence from the crime was found in Jackson's home, and the Impala was found near Jackson's home. At trial, four eyewitnesses, Anne Lynn, Daniel Clark, Tyrone Hawkins, and Lomell Hodges, identified Petitioner as Ladouceur's shooter. Lynn and Clark testified on February 14, 2000, and Hawkins and Hodges testified one day later.

Lynn had previously attended a lineup and told police that someone in the lineup other than Petitioner looked like the shooter, but that person was not the shooter. Clark testified that police had shown him photographs, but that he did not identify anyone in the photographs. After Clark testified, Petitioner's counsel stated that a discovery order had been issued and that he wanted to see the photographs Clark had mentioned while testifying. The prosecutor replied that he was unaware of any photographic show-up. On February 16, 2000, Investigator Dale Collins testified that he had taken an array of "about eight or nine photos" to the neighborhood where Ladouceur was shot and that array contained photos of Petitioner and Clee Jackson. Investigator Collins testified that no one identified Petitioner as the perpetrator of the crime. Nothing in the record indicates that police officers showed photographs to Hodges, and Hawkins testified that he was not shown any photos.

Following his conviction, Petitioner moved for a new trial, contending that (1) the identification testimony of eyewitnesses Anne Lynn, Daniel Clark, Tyrone Hawkins, and Lomell Hodges was suspect because they identified Petitioner for the first time at trial; (2) the prosecutor withheld purportedly exculpatory evidence regarding the witnesses' inability to identify Petitioner previously; and (3) there was newly discovered evidence, in the form of a letter[1]

---

[1] The district court noted that the letter was postmarked on November 12, 1999, and was received by the Wayne County Jail on November 17, 1999, although Petitioner claims that he did not receive the letter until February 16, 2000, a time after which the jury had already begun its deliberations. The handwritten letter reads:

What's up M.D., you cain't [sic] write a nigga, what up with that, you know I have you always have, [sic] your blood and nothing can change that fact. Dog I'm sorry my wife [Johslin Jackson] told those lies, but she was scared man. I went

written by Clee Jackson to Petitioner while Petitioner was awaiting trial in jail, which implies

that Petitioner was framed and that Jackson and his wife lied about Petitioner's involvement in

the shooting.

---

along, because they already had her statement before my eyes. But she got her truth-lies mixed, because goose [sic] and Waldo well Waldo, had the blood, I asked her why-she said you came back bye [sic], She was scared, and didn't know what to say. I couldn't let my wife be locked up, other wises [sic] she'd lie on anybody to save her self, she might have said something stupid and they might have listened, then we all be do [sic] life. But they know you're being framed, the girl saw your picture on T.V. and anybody can be smart enough to know that the accused sets [sic] in front of the Judge, I told her should've just [indecipherable] but she thought they'd come bye [sic] in the night, and shoot up the house, Johslin ain't like us man, she just don't know.

She misses you, just as much as me, and I think about your ass, day-night, me and big tim [sic] talk about you every day man. I said you'd be out around March-April but I don't know what you think of me or us for that matter, I don't know if you hate me want to kill me or what. But I do know this, beleave [sic] it or not, even if you was [sic] guilty, I'd go down my self [sic], if it didn't have to bring no one [sic] else with me. I love you man and you running [sic] me crazy. If you need me [sic] money whatever man I hear I'll never turn on you, regardless of what you think I'm hear [sic].

So I'll have a phone, and you can call. It will be a three way, so I will send the #.

Mac -n- C.J. cousin – Dogs like it or not when you come home hopefully together we'll bring the noise.

Signed C. Jackson, Sr.

[indecipherable] Who what up on the loot.

P.S. If god [sic] willing I'll be hear [sic] when you come home you know I'm sick and I got a couple beef to [sic] so I love ya.

See you then Cousin.

Cortez -n- Jessee trying to write you to [sic] but I cain't [sic] write all that[.] [Y]ou won't read it all.

JA at 99-101, 220-21.

The trial court denied Petitioner's motion, concluding that "[t]he jury heard Mr. Jackson's testimony implicating [Petitioner], along with the testimony of the other witnesses," and that "[e]ven if the Court allowed Mr. Jackson to testify in a manner consistent to [sic] statements in his letter, the great weight of the evidence produced at the trial still established [Petitioner's] involvement in this crime." JA at 605. The trial court further held that the witnesses' in-court identifications of Petitioner "were made by their observation of [him] at the time of the incident," and that the failure by the prosecutor to disclose the witnesses' failed identification of Petitioner when they were shown his photo did not deny Petitioner a fair trial. JA at 210-11, 605. The Michigan Court of Appeals affirmed Petitioner's conviction, and the Michigan Supreme Court denied leave to appeal.

Petitioner filed a habeas corpus petition on January 30, 2004, claiming that (1) the prosecutor withheld exculpatory evidence in the form of witnesses who made in-court identifications at trial being unable to identify Petitioner in a previous lineup; (2) Petitioner's trial counsel failed to move pretrial for suppression of the in-court identifications; (3) Petitioner's trial counsel failed to move for a mistrial when the withheld exculpatory identification evidence was first introduced at trial; (4) Petitioner's trial counsel failed to move for a mistrial when newly discovered exculpatory evidence, namely Clee Jackson's letter, came to light during jury deliberations; and (5) Petitioner's trial counsel did not request the cautionary accomplice instruction for witness Clee Jackson, where Jackson testified to his role as an accessory after the fact, all physical evidence pointed to Jackson as the perpetrator, and Jackson fit the description of the perpetrator as given by eyewitnesses.

The district court denied the petition. First, it concluded that Petitioner was not prejudiced by the alleged suppression of exculpatory evidence because it "was brought to the jury's attention and because [Petitioner's] attorney had an opportunity to cross-examine the eyewitnesses about their identification testimony." JA at 216. The district court also pointed out that Petitioner's trial counsel used the information in making his closing argument, contending that it raised a reasonable doubt. Accordingly, the district court held that there is not a reasonable probability that the result of the trial would have been different, even if the evidence had been disclosed prior to trial. Second, the district court concluded that (1) although Petitioner's trial counsel did not move to suppress the in-court identifications, he did attack the credibility of those identifications and (2) a motion to suppress the identifications likely would not have succeeded in any event.

Third, the district court held that Petitioner's trial counsel's failure to move for a mistrial when Clee Jackson's letter was brought to light was a reasonable strategic decision because (1) the letter was not an admission of perjury and (2) there was not a reasonable probability that the outcome of the trial would have been different if Petitioner's trial counsel had moved for a mistrial because Petitioner's appellate attorney raised the same issue in a motion for new trial, and the trial court denied that motion. Finally, the district court held that Petitioner's trial counsel was not ineffective for failing to request a jury instruction on accomplice testimony because there was no evidence that Clee Jackson assisted Petitioner in the murder.

Petitioner filed a timely appeal, raising those claims he raised in the habeas petition, with the exception that he did not raise the claim regarding accomplice liability.

## II. ANALYSIS

### A. Standard of Review

This court applies a de novo standard of review to the district court's conclusions of law and mixed questions of law and fact and accordingly uses the same standard of review as the district court. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). This court reviews the district court's findings of fact only for clear error. *Id.* at 1010; *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir.), *cert. denied*, 543 U.S. 982 (2004). The Antiterrorism and Effective Death Penalty Act of 1996 dictates the standard of review for habeas petitions filed after April 26, 1996. 28 U.S.C. § 2254(d). The Supreme Court has held that

> [u]nder § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The Court has further held that "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed" and that the proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Id.* at 409-11.

**B. Withheld Evidence**

A criminal defendant's due process rights are violated if the government suppresses favorable evidence where that evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecution. *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* violation consists of three elements: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the state must have suppressed the evidence, whether wilfully or inadvertently; and (3) prejudice must have resulted. *Strickler*, 527 U.S. at 281-82. The defendant has the burden of proving a *Brady* violation. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (citing *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972)). The Supreme Court has held that the failure to disclose evidence is "material" and "prejudicial" to the defendant if the evidence creates a reasonable probability of a different result, *Strickler*, 527 U.S. at 280, 282, and that a reasonable probability of a different result exists if the government's suppression of evidence undermines confidence in the outcome of the trial, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

On appeal, Petitioner raises several arguments in regards to this issue. First, he attempts to analogize to *Jamison v. Collins*, 291 F.3d 380 (6th Cir. 2002). Second, he claims that contrary to the district court opinion, he did not have an adequate opportunity to cross-examine the identification testimony. He asserts that this is true because (1) the suppressed photos, officer notes, and officer reports were never produced, and (2) the "full content of the exculpatory evidence" was not elicited until Investigator Collins testified during the third day of the trial, after some eyewitnesses had been cross-examined and released. Third, Petitioner claims that he

was prejudiced because he never had the benefit of demonstrating the comparison between the show-up photographs and his appearance at trial, which he argues tainted the in-court identifications.

The district court did not err in connection with this issue because under the facts of this case, Petitioner cannot show that the purportedly suppressed evidence "undermine[d] confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434. Indeed, Petitioner's trial counsel questioned the eyewitnesses whom the evidence concerned through cross-examination on the second day of trial: Lynn was questioned regarding her attendance at a lineup,[2] and Clark was questioned

---

[2] The following colloquy occurred during cross-examination of Lynn by Petitioner's trial counsel:

Q. Now, did you ever attend a lineup?
A. Yes.
Q. At any point?
A. Yes.
Q. That had the defendant, Mr. Butler, in the lineup?
A. No.
Q. But you were asked to attend a lineup.
A. Yes, I was.
Q. Is that correct?
A. Yes.
Q. And did you ever say that anyone else was the shooter?
A. No.
Q. Never identified another person as the shooter in this case?
A. No, I didn't. At the lineup, they asked me who looked the most like the defendant, and I pointed a man out, but I told them, "That looks like him, but that is not him."

JA at 463-64. Lynn later testified that she only attended one lineup and that she never viewed photographs for police officers.

regarding his viewing of a photographic display.[3] Moreover, the district court noted that

Petitioner's trial counsel argued in his closing statement that this failure created a reasonable

doubt.

Furthermore, it cannot be said that confidence in the outcome of the trial was undermined

because the identification evidence against Petitioner was overwhelming. The photographic

display evidence only pertained to Clark, yet Lynn, Hawkins, and Hodges also identified

Petitioner at trial as the shooter, and their testimony cannot be claimed to have been tainted by

the allegedly suppressed evidence. Hodges identified Petitioner in court and said that there was

no one else in the immediate area involved in the struggle. Hawkins identified Petitioner in

court, and he testified that he knew Petitioner from before the incident and that he had a clear

---

[3] The following colloquy occurred during cross-examination of Clark by Petitioner's trial counsel:

> Q. Did they ever have you come – when I say "they," I mean the police – ever have you come down and view photographs?
> A. They had me view photographs, but they brought it [sic] to me.
> Q. Oh, they did?
> A. Um hmm.
> Q. When did they do that, sir?
> A. I don't quite remember the exact date and time.
> Q. Did you identify anyone in those photographs?
> A. No.
> Q. And was it after May 14th, 1999?
> A. I don't remember the time. I don't –
> Q. (Interposing) About how many days, if you know, after the shooting?

JA at 272. The remainder of the cross-examination of Clark is not present in the record.

view of Petitioner's face during the carjacking. Accordingly, Petitioner has not established all

three elements of a *Brady* violation.[4]

## C. Ineffective Assistance of Counsel

In order to establish ineffective assistance of counsel, a defendant must demonstrate that

(1) the performance of his counsel was deficient and (2) the deficient performance thereby

prejudiced the defense and deprived the defendant of a fair trial, a trial with a reliable result.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In determining whether counsel's

performance was deficient, *Strickland* dictates that the inquiry "must be highly deferential":

> A fair assessment of attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from counsel's
> perspective at the time. . . . [A] court must indulge in a strong presumption that
> counsel's conduct falls within the wide range of reasonable professional
> assistance . . . . A convicted defendant making a claim of ineffective assistance
> must identify the acts or omissions of counsel that are alleged not to have been the
> result of reasonable professional judgment.

*Id.* at 689-90. In determining whether counsel's performance was prejudicial, "[t]he defendant

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court further

held that a "reasonable probability is a probability sufficient to undermine the confidence in the

---

[4] Petitioner's reliance on *Jamison* is misplaced. In that case, the petitioner only became aware of the suppressed exculpatory evidence after he was convicted. 291 F.3d at 383-84. To the contrary, in the instant case Petitioner became aware of the allegedly exculpatory evidence at a time early enough such that Petitioner's trial counsel was able to argue to the jury that a reasonable doubt existed due to this evidence. Furthermore, other identification testimony overwhelmingly implicated Petitioner here. Accordingly, *Jamison* is inapplicable and Petitioner's attempt to analogize to that case does not undermine confidence in the trial's outcome.

outcome." *Id.* Finally, it should be noted that courts are not required to conduct an analysis under both prongs of the *Strickland* test; indeed, the court need not address the question of competence if it is easier to dispose of the claim due to a lack of prejudice. *Id.* at 697; *Mallet v. United States*, 334 F.3d 491, 497 (6th Cir. 2003).

### 1. Failure to move to suppress in-court identifications

Petitioner asserts that a motion to suppress the in-court identifications of him as the shooter was appropriate and "under the totality of the circumstances, his likelihood of prevailing was probable." In support of his claim, Petitioner points out that Lynn admitted that the prosecuting attorney told her that he needed her to come in and identify Petitioner as the shooter. He analogizes his situation to cases of suggestive show-ups in which a victim is told that his attacker is in a line-up or a defendant is walked into the courtroom in shackles with a United States marshal at each side. Petitioner also notes that eyewitnesses gave physical descriptions contrary to Petitioner's physical characteristics and were unable to identify Petitioner in photographic show-ups, both facts that he argues undermine the reliability of the in-court identification.

The district court did not err in denying Petitioner habeas relief on this ground. There was no suggestive pretrial identification under the facts of this case because nothing in the record indicates, and indeed Petitioner does not claim, that there was a pretrial identification at all; rather, there was only a failure by Clark to identify Petitioner pretrial. Moreover, as the district court correctly pointed out, the failure of a witness to identify a petitioner pretrial "goes only to the weight to be accorded testimony, not its admissibility." *United States v. Causey*, 834 F.2d

1277, 1286 (6th Cir. 1987). Accordingly, the fact that none of the witnesses identified Petitioner pretrial is not a basis for suppressing their in-court identifications of him.

A motion to suppress the in-court identifications would not have succeeded for any other reason either. An identification violates a criminal defendant's due process rights if the procedure is so unnecessarily suggestive so as to run the risk of irreparable mistaken identification. *Neil v. Biggers*, 409 U.S. 188, 198-200 (1972); *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). The petitioner bears the burden of showing impermissible suggestiveness, *Howard*, 405 F.3d at 469, and the analysis is two-part: the court first assesses whether the identification was unnecessarily suggestive, and if so, the court determines whether the identification was nonetheless reliable. *Id.*; *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).

Lynn admitted that she was told that someone was apprehended in connection with the shooting, that that person would be in court, and that law enforcement needed her to identify him. However, she also testified that she was not told she had to identify anyone in court and that the prosecutor told her that if Petitioner was not the shooter, then she needed to take the stand and testify that he was not. Accordingly, the identification was not unnecessarily suggestive. Moreover, she testified that the day of the shooting "was a sunny day, a really nice day," that her vision "was good," that there was nothing obstructing her view, that she saw Petitioner's face at several times during the carjacking, and that she was "absolutely positive" that Petitioner was the shooter. JA at 461-62. Therefore, even if the identification was unnecessarily suggestive, it was not unreliable under these facts.

Even if Lynn's identification should have been suppressed, Petitioner still was not deprived of ineffective assistance of counsel because he could not establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. The eyewitness testimony of Clark, Hodges, and Hawkins would not have been suppressed, as discussed below. Accordingly, that testimony compels the conclusion that the result of the proceeding would not have been changed if Petitioner's trial counsel had moved to suppress Lynn's in-court identification of Petitioner.

Petitioner's remaining complaints would not exclude the in-court identifications either. He complains of ten months elapsing between the time of the carjacking and the trial as well as the fact that many of the witnesses' physical descriptions of the shooter did not match his. First, this circuit has upheld a challenge to an in-court identification that occurred a year and a half after a photo lineup following an incident. *United States v. Meyer*, 359 F.3d 820, 825 (6th Cir. 2004). Second, the physical description discrepancies go to reliability, and that information came out on cross-examination of the witnesses. Regarding reliability, moreover, the evidence against Petitioner is overwhelming. Clark identified Petitioner in court, and in doing so, he testified that he saw Petitioner's face during the incident, and that was the only reason he was identifying Petitioner in court; Hawkins testified that he knew Petitioner from the neighborhood, that he got a clear look at Petitioner's face as the perpetrator, and that he identified Petitioner in court because "that's who I seen [sic] at the day and time of the shooting," JA at 332-34, 345; and Hodges identified Petitioner in court and also said that there was no one else in the immediate area involved in the struggle.

**2. Failure to move for a mistrial when the withheld identification evidence was first introduced at trial**

Petitioner next claims that his trial counsel was ineffective because that counsel did not move for a mistrial once the purported exculpatory evidence in the form of Clark's having previously viewed a photographic display and not chosen Petitioner's photograph came to light during the trial. Petitioner's brief, however, contains no argument regarding why (1) the performance of his counsel was deficient in this respect, or (2) the deficient performance thereby prejudiced the defense and deprived the defendant of a fair trial.

This claim by Petitioner must also fail. Petitioner's trial counsel asked Clark on cross-examination whether he had viewed a photographic display and whether he had identified anyone. Furthermore, that Clark did not identify Petitioner in the photographic display pretrial goes only to the weight to be accorded to his testimony, not its admissibility. *Causey*, 834 F.2d at 1286. Accordingly, Petitioner can establish neither that his trial counsel's not moving for mistrial when this evidence came to light was deficient nor that prejudice resulted that deprived him of a fair trial.

**3. Failure to move for a mistrial when newly discovered evidence in the form of Clee Jackson's letter came to light during jury deliberations**

Petitioner also argues that his trial counsel was ineffective for not moving for a mistrial when Clee Jackson's letter came to light. Petitioner alleges that the contents of the letter demonstrate that Mr. Jackson perjured himself regarding Petitioner's involvement in the crime. Petitioner contends that Mr. Jackson's perjured testimony at trial directly contradicted Petitioner's theory of the case, namely misidentification. Petitioner thus claims that he "is at a

loss to explain the degree of incompetence of counsel when provided with particular evidence, handwritten and signed by a lead state's witness admitting his own guilt, and exonerating Petitioner of the conviction charges." Petitioner's Br. 51.

The district court, denying Petitioner relief, properly decided this issue. Petitioner can show neither element of *Strickland* under these facts. First, his trial counsel was not deficient. Petitioner's trial counsel waited to see if Petitioner was convicted before moving for a new trial on the basis that Petitioner complains. This strategy allowed Petitioner to find out whether he was even convicted before raising the issue, and a not guilty verdict would have foreclosed any further prosecution unlike a successful motion for a mistrial. Accordingly, the new trial motion allowed for Petitioner to raise the issue at the trial court level without losing the chance of receiving a not guilty verdict. This strategy surely meets the deferential standard of *Strickland* set out above.

Second, Petitioner cannot show prejudice. Indeed, as the district court noted, the ambivalent letter more likely concerns the Jacksons' statements to police, not their testimony. This conclusion is supported by the fact that the trial occurred in February 2000, yet even Petitioner admits that the letter was stamped received by the Wayne County Jail on November 17, 1999. Furthermore, to the extent that the trial court denied Petitioner's motion for a new trial on the same issue, there is not a reasonable probability that the outcome of the trial would have been different even if Petitioner's trial counsel had moved for a mistrial. Indeed, the trial court recognized that even with Clee Jackson testifying consistently with his letter, other evidence established Petitioner's involvement in the crime. The four eyewitnesses' testimony, discussed

- 16 -

above, was reliable, and it was overwhelming. Accordingly, Petitioner can show neither

prejudice nor deficient performance, and his ineffective assistance claim on this issue fails.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court.