RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0232p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-6035

WILMER CANELAS-AMADOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:15-cr-00053-1—Thomas W. Phillips, District Judge.

Decided and Filed:  September 14, 2016

Before:  SILER, BATCHELDER, and GIBBONS, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Brooklyn Sawyers, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

ALICE M. BATCHELDER, Circuit Judge.  As anyone who watches detective shows on television can tell you, it is rarely good news when "the feds" take over on a case—they are generally portrayed as likely to bungle the whole thing, permitting the guilty party to get off scot-free.  This trope is certainly a gross exaggeration.  But at least in this case there may be a

1

grain of truth to it, albeit in circumstances involving the less-than-thrilling minutiae of immigration law and the federal sentencing guidelines.

Six years ago Tennessee law enforcement officials arrested illegal immigrant Wilmer Canelas-Amador and charged him in Tennessee state court with felony aggravated assault and a few related misdemeanors. The record before us does not contain any findings of fact by the Tennessee court or any hearing transcripts, but it does include a document entitled "Waiver of Trial by Jury and Acceptance of Plea of Guilty," which Canelas-Amador signed and the Tennessee trial court approved in a form order.

Before the trial court could enter judgment or pronounce a sentence, however, federal immigration authorities took Canelas-Amador into custody, moving him out of Tennessee and eventually deporting him back to Honduras. When Canelas-Amador failed to appear for a presentence interview, the Tennessee trial court (which was, apparently, unaware that Canelas-Amador had been taken out of state by immigration authorities) issued a capias (*i.e.*, a bench warrant) ordering law enforcement to bring him into custody, presumably to sit for the interview. Not surprisingly, nothing came of the capias, and the matter appears to have lain dormant ever since.

Soon after being deported, Canelas-Amador reentered the U.S. illegally and was promptly arrested. He pled guilty to illegal reentry in federal court in Texas and was sentenced to one year of imprisonment. Then, in 2015, he was again arrested, this time in Tennessee, and was charged in federal court in Tennessee with illegal reentry, to which he pled guilty. This time, however, the district court gave him a much longer sentence: 57 months' imprisonment, basing that sentence in large part on its 57–81 month guideline-range calculation. At the heart of that calculation was the district court's determination, over Canelas-Amador's objection, that the state court order accepting his "Waiver of Trial by Jury and Acceptance of Plea of Guilty" constituted a "conviction for a felony that is . . . a crime of violence," mandating a sixteen-point

enhancement under the guideline provision applicable to Illegal Reentry.    U.S.S.G. § 2L1.2(b)(1)(A)(ii).[1]

As the district court noted, § 2L1.2(b)(1)(A)(ii) of the guidelines does not define "conviction," nor have we supplied any controlling interpretation of that term.  The district court therefore looked to cases from outside of this circuit, concluding that the Immigration and Naturalization Act (INA), specifically 8 U.S.C. § 1101(a)(48)(A), provided the proper definition of "conviction," since the crime of illegal reentry is codified in the INA at 8 U.S.C. § 1326.

> Under § 1101(a),
>
> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> > (i)  a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> >
> > (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

The district court concluded that the state court order accepting the guilty plea was "a formal judgment of guilt and is therefore a conviction for purpose of Sentencing Guideline § 2L1.2(b)(1)(A)."  This calculation, together with that court's criminal-history determination, resulted in the aforementioned guideline range of 57–81 months' imprisonment.    Sans enhancements, Canelas-Amador would have been facing a guideline range of two to eight months' imprisonment.

---

[1]Relatedly, the district court found—again, over Canelas-Amador's objection—that the Presentence Report appropriately concluded that three criminal history points were warranted because Canelas-Amador had been sentenced by the Tennessee state court and had illegally reentered the U.S. "while under a criminal justice sentence."  These conclusions were incorrect.  As mentioned above, the Tennessee trial court never sentenced Canelas-Amador, nor was the capias issued for a "probation violation," as the district court seems to have concluded.  *Compare Moore v. State*, 578 S.W.2d 78, 81 (Tenn. 1979) ("Under [Tennessee] criminal procedure, a capias is [an] intermediate process having the sole purpose of securing the presence of the defendant."), *with* U.S.S.G. § 4A1.1(c), (d).

This appeal presents us with a single question: was the district court right that the state court order accepting the guilty plea was a conviction for the purposes of § 2L1.2(b)(1)(A)(ii)? On the district court's own reasoning—which, tellingly, the government does not defend in this appeal—the answer is straightforward: no, a plea agreement approved in a form order falls well short of "a formal judgment of guilt" under § 1101(a)(48)(A).

True, we give words "their ordinary, contemporary, common meaning" unless there's a good reason not to, *Perrin v. United States*, 444 U.S. 37, 42 (1979), and the word "judgment" is often understood to mean any formal judicial decision, *see, e.g.*, *Random House Webster's Unabridged Dictionary* 1036 (1987) (defining "judgment" as "a judicial decision given by a judge or court"); *Webster's Third International Dictionary* 1223 (1986) (defining "judgment" as "a formal decision or determination given in a cause by court of law or other tribunal"). Legal dictionaries define the term more narrowly, emphasizing the finality of the decision, *see, e.g.*, *Black's Law Dictionary* 970 (10th Ed. 2014) (defining "judgment" as a "court's *final* determination of the rights and obligations of the parties in a case [including] any order from which an appeal lies" (emphasis added)), but this is not without exceptions, *see Ballantine's Law Dictionary* 680 (3d ed. 1969) (emphasizing finality, but also noting that "judgment" is "[s]ometimes synonymous with decision").

The initial plausibility of the district court's construction does not bear up under close scrutiny, however. The sort of judgment spoken of in § 1101(a)(48) is a *criminal* judgment. When used in this setting, the term refers to something much more definite that simply any ruling by a court. As the Supreme Court has put it: "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937). Indeed, the phrase "judgment of guilt" bears a striking resemblance to the technical legal phrase "judgment of conviction"—which, according to both Federal Rule of Criminal Procedure 32(k) and *Black's Law Dictionary*, is a written record setting "forth the plea, the jury verdict or the court's findings, the adjudication, and sentence." Fed. R. Crim. P. 32(k); *accord Black's Law Dictionary* 972 (10th Ed. 2014).

This similarity has prompted our colleagues on the Second, Third, Fifth, and Eleventh Circuits to conclude that Rule 32(k) sets forth the correct definition of "formal judgment of

guilt." *See Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 629 F.3d 1223, 1226–27 (11th Cir. 2011); *Singh v. Holder*, 568 F.3d 525, 530 (5th Cir. 2009); *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 328–29 (2d Cir. 2007); *Perez v. Elwood*, 294 F.3d 552, 562 (3d Cir. 2002). We agree. The only difference between the two phrases—the substitution of "guilt" for "conviction"—strikes us as immaterial. Indeed, Rule 32(k) sets "conviction" in opposition to "not guilty." *See* Fed. R. Crim. P. 32(k). And the key point, as the Second Circuit noted in *Puello*, is that "both terms center on the action the court must take to formalize the judgment," 511 F.3d at 329, a point underscored by § 1101(a)(48)(A)'s inclusion of the word "formal."

Further, if "formal judgment of guilt" just means a court order of some sort, why did Congress bother to include the alternative definition? Under the district court's broad reading, a mere finding of guilt or entry of "a plea of guilty" would be sufficient in all circumstances, regardless of whether formal "adjudication of guilt ha[d] been withheld" or the court had imposed any "punishment, penalty, or restraint on the alien's liberty." Such a construction is dubious, to say the least. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988) (presumption against redundancy). We therefore conclude that there was no "formal judgment of guilt" on the aggravated assault charge because the Tennessee court never sentenced Canelas-Amador for the aggravated assault and those truncated proceedings do not constitute an adjudication under Rule 32(k). *See Mejia Rodriguez*, 629 F.3d at 1227.[2]

The government contends that this court is nevertheless bound to affirm the district court's guideline calculation based on our decision in *United States v. Pritchett*, 749 F.3d 417, 425–26 (6th Cir. 2014). That case held, in relevant part, that a defendant's prior guilty plea to a state-law offense was a "prior conviction" under 21 U.S.C. § 841, despite the defendant's

---

[2]This is not, as the district court rightly concluded, a circumstance where "adjudication has been withheld"—the adjudication simply never happened. And even if it *had* been withheld, there is nothing in the record suggesting that the Tennessee trial court "ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A).

"successful completion of [a] probationary sentence and the expungement of [the defendant's] record." *Id.* It based this conclusion, in part, on the fact that, "in some circumstances, a guilty plea alone [is] enough to constitute a conviction." *Id.* at 424 (brackets in original; internal quotation marks omitted). And while we have stated, in an unpublished (and thus nonbinding) opinion, that a guilty plea is *always* enough, *United States v. Hamad*, 575 F. App'x 660, 661 (6th Cir. 2014) (unpublished) (per curiam) (quoting *Pritchett*, 749 F.3d at 424), this is not, as our discussion of § 1101(a)(48)(A) makes clear, an accurate summary of federal law. Contrary to the government's contentions, *Pritchett* thus does not decide this case. But it does raise an important question: is this one of those circumstances where a guilty plea alone is sufficient? Put another way, was the district court right in concluding that § 1101(a)(48)(A) provides the proper definition?

The government says "no"—the proper definition of "conviction" is found, not in § 1101, but in the guidelines themselves, specifically in § 4A1.2(a)(4), which governs criminal history computation. That section provides that "'Convicted of an offense,' for the purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." U.S.S.G. § 4A1.2(a)(4). Under *this* approach, there is no question that a guilty plea alone is sufficient.

So, which definition applies? As it turns out, there is an (apparently unacknowledged) circuit split on this question. The Fourth, Fifth, Tenth, and Eleventh Circuits have looked to § 1101. *See United States v. Medina*, 718 F.3d 364, 368 (4th Cir. 2013) ("Given that § 2L1.2—unlike § 4A1.2—relates specifically to an immigration offense, we conclude . . . that the definition of conviction in § 1101 must control."); *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004); *United States v. Anderson,* 328 F.3d 1326, 1328 (11th Cir. 2003); *United States v. Zamudio*, 314 F.3d 517, 521 (10th Cir. 2002). But the First, Second, and Ninth Circuits have applied the definition set forth in § 4A1.2(a)(4). *See United States v. Mendez-Sosa*, 782 F.3d 1061, 1063 (9th Cir. 2015) ("Chapter Four of the sentencing guidelines, and not the Immigration and Nationality Act, provides the proper definition of 'conviction.'"); *United States v. Campbell*, 167 F.3d 94, 98 (2d Cir. 1999); *United States v. Cuevas*, 75 F.3d 778, 782 (1st Cir. 1996).

The reasoning in these cases is very thin. And it is not surprising that the split has gone unnoticed since, in most circumstances, the disagreement is irrelevant. All of the cases cited above analyzed whether diversionary sentences or expungements count as convictions for the purposes of § 2L1.2. The answer to that question is that they do, regardless of which definition applies. In the unusual circumstances of this case, however, the difference matters a great deal.

The guidelines are designed to ensure that the penalties provided for in federal criminal statutes are applied in a just, uniform, and predictable way. Thus, while § 1101(a) defines terms only insofar "[a]s used in this chapter," we believe that Canelas-Amador is correct in saying that, all things being equal, it makes sense to interpret a term used in both a criminal statute and in the guidelines provisions applicable to that statute consistently and with reference to the statutory definition. On the other hand, if the guidelines themselves provide a specific definition, it makes sense to follow that, even in the face of a conflicting statutory definition. *See United States v. Pimentel-Flores*, 339 F.3d 959, 963–64 (9th Cir. 2003).

What makes this case difficult is that it falls somewhere in between these two situations. Section 4A1.2(a)(4) is part of the guidelines of course, but it does not purport to provide a comprehensive definition for *all* guidelines provisions. *See* U.S.S.G. § 4A1.2(a)(4) ("'Convicted of an offense,' for the purposes of *this provision* means . . . ." (emphasis added)). Nevertheless, the government has a point in saying that it would be odd to define "conviction" one way for computation of criminal history—§ 4A1.2—and another way for computation of the impact criminal history has on the offense level—§ 2L1.2. Similarly, though the comments to § 2L1.2 do define some terms by making explicit reference to § 4A1.2(a)(4), they at other points look to § 1101(a) for definitions. The comments for the two sections, moreover, include slightly different definitions of "crime of violence."

The circumstantial evidence is thus far from decisive. And while we think that, without a clear statement in the guidelines to the contrary, the statutory definition is generally preferable, there remains a not insignificant doubt as to which definition should apply here. When, in criminal cases, the tools of statutory interpretation do not resolve a question, where significant doubt or uncertainty lingers, we must construe the provision in favor of the defendant. *See Chapman v. United States*, 500 U.S. 453, 463 (1991). This principle—the rule of lenity—

has roots deep within the Anglo-American legal tradition, and it "embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348 (1971) (internal quotation marks omitted). As Chief Justice John Marshall explained nearly two centuries ago,

> The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.

*United States v. Wiltberger*, 18 U.S. 76, 95 (1820).

The guidelines are not statutes, of course, but they are promulgated by the United States Sentencing Commission pursuant to federal statute, and they play an important, often central, role in determining how long someone will languish in prison. Thus, as we have previously stated, we may "apply the rule of lenity to matters relating to the Sentencing Guidelines." *United States v. Boucha*, 236 F.3d 768, 776 (6th Cir. 2001). Applying that rule here, we hold that the more restrictive definition set forth in § 1101(a)(48)(A) applies. Under that definition, Canelas-Amador was never convicted of aggravated assault by the Tennessee state court, and we therefore hold that that the district court erred in calculating the guidelines range.

It might be argued that this conclusion elevates form above substance—*he pled guilty to the crime after all*! And, in a sense, our decision today does do just that. But it does so for the very good reason that form is of paramount importance in the criminal law. As with the vagueness doctrine, the rule of lenity sets an outer limit, checking the tremendous power of the state by requiring it to act with a minimum level of clarity and transparency when it wishes to deprive people of their liberty. It reflects our nation's solemn commitment to the principle that it is better to not punish those who have done wrong—or, in cases like this one, to punish them more lightly—than to countenance legal provisions so foggy that they fail to provide fair notice and thus, ultimately, leave the rights of the innocent unprotected. *See The Federalist No. 62*, at 323–24 (James Madison) (The Gideon ed., George W. Carey & James McClellan eds., Liberty Fund 2001) ("It will be of little avail to the people, that the laws are made by men of their own choice, if the laws be so voluminous that they cannot be read, or *so incoherent that they cannot*

*be understood* . . . . Law is defined to be a rule of action; but how can that be a rule, which is little known and less fixed." (emphasis added)).

Finally, the government's contention that Canelas-Amador "seems to argue that because he did not comply with his duty to appear in state court for a presentence interview, he must now be relieved of the burdens of that criminal conduct to which he pleaded guilty," gets things exactly backwards. As we noted at the outset, it was the action of the federal government, not Canelas-Amador, that resulted in his removal from the state before a formal judgment of conviction could be entered. Its desire to see the immigration laws executed promptly is understandable—even quite commendable—but it has no one to blame but itself for the consequences of having in this instance acted too quickly.

The district court's incorrect guidelines-range calculation was a significant procedural error. *See United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). And we therefore reverse and remand to the district court for resentencing consistent with this opinion.