NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0156n.06

**No. 19-6410**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Mar 25, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| TONY DEWAYNE WILLIAMS, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

---

**BEFORE:** **MOORE, COOK, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Tony DeWayne Williams was convicted of a Tennessee marijuana offense in 2015 and, in 2019, the federal offense of being a felon in possession of a firearm. At sentencing, the district court increased his base offense level because of the 2015 conviction, raising the low end of his Guidelines range by three years. Williams challenges the procedural reasonableness of that decision, arguing that the district court erred by counting the 2015 conviction as a "controlled substance offense" for purposes of USSG § 4B1.2. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that miscalculation of Guidelines range is "significant procedural error" constituting an abuse of discretion); *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Though we agree with Williams that his Guidelines range was miscalculated, because he has not satisfied the plain error review standard we must apply, we **AFFIRM** his sentence.

## I.   BACKGROUND

On July 17, 2015, Williams was convicted of possession of marijuana for resale under Tenn. Code Ann. § 39-17-417(a)(4) (2014), a felony.   At that time, Tennessee's definition of "marijuana" included unlicensed hemp.  Tenn. Code Ann. § 39-17-402(16) (2015); *see also Rieves v. Town of Smyrna*, 959 F.3d 678, 686 n.2 (6th Cir. 2020) (discussing the differences between "illegal marijuana" and hemp).

On December 20, 2018, the Agricultural Improvement Act of 2018 was enacted, removing hemp from Schedule I's list of controlled substances.  Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018 (codified at 21 U.S.C. § 812 (2018)).  Consequently, the term "marihuana" in federal law explicitly excluded hemp as of December 21, 2018.  21 U.S.C. § 802(16) (2018).  A few months later, Tennessee followed suit, removing hemp from its equivalent Schedule IV as of April 3, 2019, to comport with the federal definition of marijuana.  2019 Tenn. Pub. Acts ch. 87 (codified at Tenn. Code Ann. §§ 39-17-402(16)(c), -403(f)(1), -415, 43-27-101 (2019)); *compare* 7 U.S.C. § 1639o(1) (2018), *with* Tenn. Code Ann. § 43-27-101(3) (2019).

Soon after, on July 11, 2019, Williams pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), stipulating that he knew he was a felon when he possessed the gun at issue.  *See Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019).  The Probation Office's presentence report (PSR) calculated Williams's Guidelines range by starting with a base offense level of 14, *see* USSG § 2K2.1(a)(6), and increasing it by six levels on the assumption that Williams had committed the offense "subsequent to sustaining one felony conviction of . . . a controlled substance offense," *id.* § 2K2.1(a)(4)(a); *see also id.* § 4B1.2(b) (defining "controlled substance offense").  Williams, who had only one such prior conviction, was not subject to the Armed Career Criminal Act ("ACCA").  *See* 18 U.S.C. § 924(e)(1) (enhancing

sentences for violations of § 922(g) when the person has "three previous convictions . . . for a violent felony or a serious drug offense or both").

The PSR, however, acknowledged that its application of § 2K2.1(a)(4)(a) was debatable in light of our then-recent decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). The PSR also added two levels because the firearm had been reported as stolen from a different state, added four levels because Williams had possessed the gun "in connection with another felony offense" (possession of methamphetamine during the traffic stop giving rise to his case), and then subtracted three levels for acceptance of responsibility, resulting in an offense level of 23 and a Guidelines range of 92 to 115 months. Williams objected to the "controlled substance offense" addition, arguing that the statute of conviction was overbroad for purposes of § 2K2.1(a)(4)(A) and that there was insufficient proof for the stolen firearm enhancement.

The district court sentenced Williams on November 22, 2019. After the Government conceded that there was insufficient proof to justify the stolen firearm enhancement, the district court sustained Williams's related objection. But it overruled Williams's objection to the increase in his base offense level due to his 2015 Tennessee marijuana conviction. The district court cited its decision a week earlier to count a similar Tennessee conviction as a controlled substance offense for Guidelines calculation purposes. *See United States v. Goins*, 828 F. App'x 324 (6th Cir. 2020) (per curiam) (affirming the district court). The court adopted the PSR's calculation, resulting in an offense level of 21 and a range of 77 to 96 months. Had Williams's 2015 conviction not counted as a controlled substance offense, his offense level would have been 15 and his range 41 to 51 months. The district court ultimately sentenced Williams to 77 months' incarceration, the low end of his Guidelines range, with three years' supervised release to follow. Williams timely appealed.

## II.  ANALYSIS

### A.  Standard of Review

The parties agree that "[w]hether a prior conviction counts as a predicate offense under the Guidelines is a question of law subject to de novo review" and that this category includes the district court's determination that Williams's 2015 conviction is a "controlled substance offense" for purposes of USSG § 4B1.2(b). *Havis*, 927 F.3d at 384. But the Government maintains that we should review for plain error Williams's argument that his 2015 conviction did not involve a "controlled substance," contending that Williams did not sufficiently argue the point before the district court. *See United States v. Bostic*, 371 F.3d 865, 871–73 (6th Cir. 2004) (holding that plain error review applies when "a party does not clearly articulate . . . the grounds upon which the objection is based" in the district court); Fed. R. Crim. P. 51(b).

A review of the record shows that though Williams objected generally to the district court's addition of six levels to his base offense level under USSG § 2K2.1(a)(4)(A), his objection focused on whether the fact that his Tennessee statute of conviction included attempt meant that *Havis* barred its use to enhance his § 922(g) sentence. On appeal, he raises that argument and the issue of whether the "marijuana" offense of which he was convicted was overbroad. We conclude that Williams did not "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection," *Bostic*, 371 F.3d at 871 (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980)), so we review for plain error.

That inquiry asks if there was an error; if it was "clear or obvious, rather than subject to reasonable dispute"; and if it "affected the appellant's substantial rights," generally by "affect[ing] the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897. 1904–05 (2018). The second prong is of particular importance: "a court

of appeals cannot correct an error . . . unless the error is clear under current law." *Olano*, 507 U.S. at 734. "[I]t is well established that courts 'should' correct a forfeited plain error that affects substantial rights 'if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."'" *Rosales-Mireles*, 138 S. Ct. at 1906 (quoting *Olano*, 507 U.S. at 736).

### B. The Statute's Inclusion of Attempt

Williams first argues that because the Tennessee statute under which he was convicted in 2015 encompasses attempt, it is too broad to qualify as a "controlled substance offense" for purposes of USSG § 2K1.2(a)(4)(A). He draws on *Havis*, in which we applied the categorical approach to hold that a similar Tennessee statute was too broad because the least culpable conduct it criminalized was attempt—conduct falling outside the Guidelines' ambit. 927 F.3d at 385–87. But we subsequently rejected the same argument (shortly after Williams filed his opening brief). *See United States v. Garth*, 965 F.3d 493, 498 (6th Cir. 2020). "[A]n appellate court must apply the law in effect at the time it renders its decision." *United States v. Woodruff*, 735 F.3d 445, 451 (6th Cir. 2013) (alteration in original) (quoting *Henderson v. United States*, 568 U.S. 266, 271 (2013)). Williams concedes in his reply brief that *Garth* controls, as it did in *Goins*, 828 F. App'x at 325. The district court did not err by overruling this aspect of Williams's objection.

### C. Williams's 2015 Conviction under USSG § 2K2.1(a)(4)(A)

Next, Williams contends that his 2015 conviction cannot properly be considered a "controlled substance offense" for purposes of USSG § 2K2.1(a)(4)(A) due to changes to the state and federal definitions of "marijuana" between 2015 and the date he was sentenced in this case. Section 2K2.1(a)(4)(A) specifies a base offense level of 20 for a violation of § 922(g) when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." It incorporates § 4B1.2(b)'s definition of "controlled substance offense" as "an offense under federal or state law, punishable

by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *See* USSG § 2K2.1 comment. (n.1).

We have previously interpreted this definition to encompass substances listed in the current federal schedules. *See, e.g.*, *United States v. Williams*, 762 F. App'x 278, 280–81 (6th Cir. 2019); *United States v. Pittman*, 736 F. App'x 551, 553 (6th Cir. 2018); *see generally* 21 U.S.C. § 812. So do several other circuits. *See, e.g.*, *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793–94 (5th Cir. 2015); *United States v. Ramos*, 814 F.3d 910, 919 (8th Cir. 2016); *United States v. Martinez-Lopez*, 864 F.3d 1034, 1037 (9th Cir. 2017) (en banc). The rationale is that "a federal sentencing enhancement provision" such as § 4B1.2(b) should be "interpreted according to a uniform, national definition, not dependent upon the vagaries of state law." *United States v. Martinez*, 232 F.3d 728, 732 (9th Cir. 2000). In other unpublished decisions, however, we have held that § 4B1.2's definition of "controlled substance" includes substances controlled only by a state, highlighting an apparent circuit split on the issue. *United States v. Sheffey*, 818 F. App'x 513, 518–20 (6th Cir. 2020); *United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017); *accord United States v. Ruth*, 966 F.3d 642, 651–54 (7th Cir. 2020); *United States v. Peraza*, 754 F. App'x 908, 910 (11th Cir. 2014). However, neither our intracircuit difference of opinion (if one actually exists) nor the national circuit split is germane here because there is no dispute that § 4B1.2(b)'s definition of "controlled substance" refers to substances whose possession and use are restricted by law through the mechanism of listing substances in a schedule. *See, e.g.*, *Ruth*, 966 F.3d at 654; *United States v. Miller*, 480 F. Supp.

3d 614 (M.D. Pa. 2020) ("[W]hether a substance is in fact 'controlled' necessarily depends on the existence of a local, state, or federal law deeming it so.").

Turning to this case, our recent explanation of how to determine whether a prior state conviction counts as a "controlled substance offense" for Guidelines purposes by using the "categorical approach" governs:

> We first map out what conduct is criminalized under the guidelines' definition. Next, we do the same for conduct criminalized under the state law that led to the conviction. Finally, we overlay the two: if the outer edges of the state law—often the "least culpable conduct" that the law proscribes—extend past the guidelines' definition, then the conviction doesn't count; if, however, the boundaries of the state law and the guidelines' definition are coterminous, or the guidelines' definition sweeps more broadly, then the conviction counts. In other words, the guidelines must fully envelop the state law of conviction.

*Garth*, 965 F.3d at 495 (citing *Havis*, 927 F.3d at 384–85);[1] *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (comparing elements in the ACCA context). And we have emphasized that "sentencing courts must 'presume that the conviction rested upon nothing more than the least of the acts criminalized.'" *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)).

Following our precedent, "we first map out what conduct is criminalized under the guidelines' definition." *Garth*, 965 F.3d at 495. The issue is consequently whether the term "controlled substance" in USSG § 4B1.2(b) includes only substances criminalized *at the time of federal sentencing*. This is a pure timing question that does not turn on the date of hemp's federal classification (or whether § 4B1.2(b)'s use of "controlled substance" refers to the federal and/or state controlled substance schedules) because Tennessee effectively adopted the federal equivalents during the timeline of this case. A basic Guidelines premise provides the answer: the

---

[1] While *Garth* held that "Tennessee possession with intent to deliver is categorically a controlled-substance offense under U.S.S.G. § 4B1.2(b)," it discussed only attempt, rather than the marijuana/hemp-related challenge Williams brings here. 965 F.3d at 497–98.

district court must use the version of the Guidelines that was "in effect on the date the defendant [was] sentenced," including any unincorporated or incorporated amendments. 18 U.S.C. § 3553(a)(4)(A); *see also Peugh v. United States*, 569 U.S. 530, 537–38 (2013); USSG § 1B1.11(a). This obligation applies when determining if a prior conviction counts as a "controlled substance offense" for purposes of the Guidelines at issue and includes the controlled substance schedules (federal and/or state) to which the Guidelines necessarily refer. *See United States v. Jackson*, 984 F.3d 507, 512 (6th Cir. 2021) ("Congress . . . incorporated the substantive offenses articulated in the [Controlled Substances Act] into the Guidelines . . . . In light of these legislative directives, we routinely utilize the CSA (even after *Havis*) in defining the relevant conduct covered by the Guidelines.") Interpreting the Guidelines to incorporate outdated controlled substance schedules, after Congress and the Tennessee legislature chose to alter them, would contravene this foundational rule. Thus, the district court should have employed the schedule (federal or state) effective at the time of sentencing. The Ninth Circuit, the only court to have conclusively decided this issue,[2] recently reached the same conclusion; we find its reasoning persuasive. *See United States v. Bautista*, No. 19-10448, --- F.3d ----, 2021 WL 769601, at *4 (9th Cir. 2020), *as amended on denial of reh'g* (Feb. 26, 2021).

Second, we map out "conduct criminalized under the state law that led to the conviction." *Garth*, 965 F.3d at 495. We must presume that Williams's 2015 conviction rested on nothing more than the least of the acts the schedules criminalized in 2015—i.e., possession of hemp. *See Burris*, 912 F.3d at 406. As described above, when Williams was convicted of Tennessee possession of marijuana for resale in 2015, Tennessee law criminalized possession of unlicensed hemp by

---

[2] This issue is also currently pending before the First Circuit and in another case before this court. *See United States v. Abdulaziz*, No. 19-2030 (1st Cir.); *United States v. Perry*, No. 20-6183 (6th Cir.).

including it within the definition of "marijuana." Tenn. Code Ann. § 39-17-417(a)(4) (2014); Tenn. Code Ann. § 39-17-402(16) (2015).

Finally, "we overlay the two." *Garth*, 965 F.3d at 495. By the time Williams was sentenced on November 22, 2019, the controlled substance schedules did not include hemp, 21 U.S.C. § 802(16) (2018); Tenn. Code Ann. § 43-27-101(3) (2019), and those schedules were the up-to-date versions the statute and the Guidelines require district courts to use at sentencing, *see* 18 U.S.C. § 3553(a)(4)(A); USSG § 1B1.11(a); *Bautista*, 2021 WL 769601, at *3. The "outer edges of the state law" (at the time of conviction) "extend past the guidelines' definition" (at the time of sentencing), so Williams's 2015 conviction "doesn't count." *Garth*, 965 F.3d at 495.

Briefly citing our unpublished decision in *Smith*, 681 F. App'x at 483, and *McNeill v. United States*, 563 U.S. 816 (2011), the Government draws the conclusion that we should "merely assess[] a historical fact—whether the conviction constituted a controlled substance offense under Tennessee law at the time of conviction." However, *Smith*'s analysis contains no discussion of the timing of state or federal criminalization, focusing exclusively on whether USSG § 4B1.2 encompasses substances criminalized by state but not federal law, an issue we do not encounter here. *See* 681 F. App'x at 487–89. *Smith*, moreover, consistently uses the present tense when comparing federal and state law, supporting the conclusion that the panel was comparing the current state of those laws. *See id.*

In *McNeill*, the Supreme Court addressed how courts should determine the maximum sentence for a previous conviction when deciding whether the conviction is for a "serious drug offense" for ACCA purposes.[3] 563 U.S. at 820–21; *see* 18 U.S.C. § 924(e)(1). *McNeill* told courts

---

[3] There may exist compelling reasons to treat the ACCA differently than the Guidelines provisions that address less serious prior convictions, like the one at issue in this case. Indeed, the Government itself has distinguished them. *See Snider v. United States*, 908 F.3d 183, 188 (6th Cir. 2018). The severity of the offenses the ACCA targets means that

to "answer this backward-looking question" by "consult[ing] the law that applied at the time of that conviction." 563 U.S. at 820. Though the length of the maximum sentence is not at issue in this case, the concurring opinion echoes *McNeill*'s statement that whether the offense involved the sort of element that the ACCA requires "can only be answered by reference to the law under which the defendant was convicted." *Id.*

*McNeill* expresses the principle that the elements of the state offense of conviction are locked in at the time of that conviction. *See also Mathis*, 136 S. Ct. at 2253 ("ACCA's term 'convictions' . . . supports an elements-based inquiry."). Our approach here is consonant with *McNeill*: in the second step of the categorical analysis, we "refer[] to the law under which the defendant was convicted," 563 U.S. at 820, and find that an element of the offense of which Williams was convicted in 2015 was the presence of a "controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (2014). That element necessarily incorporated the controlled substance schedules then in effect. Those schedules included hemp, making them broader than those in effect at Williams's federal sentencing. 21 U.S.C. § 802(16) (2014); Tenn. Code Ann. § 39-17-402(16) (2015).

*McNeill* states that courts should "avoid[] the absurd results that would follow from consulting current state law to define a previous offense." 563 U.S. at 822. But we are not doing that here (again, assuming *McNeill* applies in this context). We are consulting previous state law to define a previous offense, just as *McNeill* counsels. Moreover, "*McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code." *Bautista*, 2021 WL 769601, at *4.

---

"the culpability and dangerousness" that ACCA-predicate offenses represent, *McNeill*, 563 U.S. at 823, is often far more significant than that of non-ACCA-predicate offenses. *See generally United States v. Brewer*, 853 F.2d 1319, 1322–23 (6th Cir. 1988) (discussing the ACCA's legislative history). And the Supreme Court has at times treated the ACCA differently from other statutes as well. *See Shular v. United States*, 140 S. Ct. 779, 783 (2020).

So, we scrutinize a prior conviction  using the categorical approach.  *McNeill* does not displace the categorical approach; it provides guidance on how to carry out *one* step of that approach.  *See United States v. Seabrooks*, 839 F.3d 1326, 1347 (11th Cir. 2016) (Martin, J., concurring in the judgment).  And as has been the case before and as will remain after *McNeill*, applying the categorical approach results in some prior convictions counting and others not.[4]  *See, e.g.*, *Garth*, 965 F.3d at 495; *Jackson*, 984 F.3d at 510–11.

The concurring opinion further highlights *Mallett v. United States*, 334 F.3d 491 (6th Cir. 2003), and *McNeill*'s brief discussion of it, to argue for a time-of-conviction approach in this case. *See McNeill*, 563 U.S. at 822–23.  But a defining distinction between *Mallett* and this case is that there, "Ohio had substantially changed how drug quantities were measured since Mallett's state drug conviction," rendering it "difficult to discern" exactly how he would be sentenced under Ohio law at the time of his federal sentencing.  *Mallett*, 334 F.3d at 502.  *Mallett* thus reasoned:

> Where a state has amended its drug laws after a defendant's state-court conviction but prior to his or her federal-court sentencing, so that the offense for which the defendant had been convicted no longer exists and no conversion between the former and amended statutes is facially apparent, the disinclination to scrutinize the facts of prior state-court convictions militates in favor of determining the classification of the controlled-substance offense as of the time of the state-court conviction.

334 F.3d at 502–03; *see also McNeill*, 563 U.S. at 823 (discussing "a State reformulat[ing] its criminal statutes in a way that prevents precise translation of the old conviction into the new statutes").  No such confusion or interpretive difficulty exists here.  The offense of which Williams was convicted still existed in the same form at his sentencing.  The simple binary of these former

---

[4] *McNeill* also discusses the possibility of similarly situated defendants receiving different federal sentences based on the timing of state legislatures' actions.  563 U.S. at 823.  Without discounting this concern, this sort of line-drawing problem recurs in our law frequently.  *See Solem v. Helm*, 463 U.S. 277, 294 (1983).  The mere presence of a potentially arbitrary line, and the differing consequences on either side, cannot mean we do not enforce a rule.  Before and after *McNeill*, two similarly situated defendants could receive different federal sentences depending on if they are sentenced the day before or after the Sentencing Commission changes a Guidelines provision.  *See United States v. Horn*, 612 F.3d 524, 526–27 (6th Cir. 2010).

and amended statutes is readily apparent: hemp was criminalized in 2015; by 2019, it was not. Nor is there a need to "scrutinize the facts of prior state-court convictions": we need not "rummage through . . . state-court transcripts or records" or "resort[] to fact-intensive examinations" because we can readily follow the categorical approach and look to the least culpable conduct the state statute criminalized at the time of the conviction. *Mallett*, 334 F.3d at 502–03; *see Burris*, 912 F.3d at 406. *Mallett* remains good law, but the circumstances it contemplates—when the offense "no longer exists" and the conversion between the prior and current versions of the statute is not "facially apparent"—are simply not present in this case.

Also distinct are immigration cases holding that courts should apply the time-of-conviction federal drug schedule, upon which the Government seeks to rely. *See Doe v. Sessions*, 886 F.3d 203, 208–09 (2d Cir. 2018); *Martinez v. Attorney Gen.*, 906 F.3d 281, 287 (3d Cir. 2018). *Bautista* addressed this exact argument. 2021 WL 769601, at *4. There, the Ninth Circuit noted that like the Second and Third Circuits, it had previously held that "the question is whether the state-law crime was a categorical match at the time of conviction," but had specified that the "holding was limited to removal in the immigration context." *Id.* at *4 (emphasis removed) (citing *Medina-Rodriguez v. Barr*, 979 F.3d 738, 747–49, 749 n.6 (9th Cir. 2020)). In the context of the Guidelines, the Ninth Circuit reasoned:

> We based our decision in *Medina-Rodriguez* on a Supreme Court opinion concerning non-citizen removal, on our reading of the immigration statutes, and on the policy importance of disclosure of the then-understood immigration consequences to defendants considering a guilty plea to the state-law charge. None of those considerations apply here. . . . [I]t is clear that the issue at sentencing is the nature of the prior state-law crime under federal law at the time of sentencing rather than at the time of conviction.

*Id.* at *4. Like the Ninth Circuit, we decline to override the Guidelines' definitive provision requiring courts to use the Guidelines in effect at the time of sentencing by importing a time-of-conviction rule from a meaningfully distinct context.

\*     \*     \*

The governing rule, then, is that we look to "the nature of the prior state-law crime under federal law at the time of sentencing." *Bautista*, 2021 WL 769601,at \*4; *accord, e.g.*, *Miller*, 480 F. Supp. 3d at 614; *United States v. Swinton*, No. 6:15-CR-06055-EAW, --- F. Supp. 3d ----, 2020 WL 6107054, at \*7–8 (W.D.N.Y. Oct. 15, 2020).[5] This conclusion comports with the goal of maintaining uniform, national federal sentencing policies. *See Bautista*, 2021 WL 769601, at \*4. The rule of lenity counsels this approach as well. *See generally United States v. Canelas-Amador*, 837 F.3d 668, 674 (6th Cir. 2016). Therefore, "when the federal 'offense' is provided by the sentencing Guidelines, like Section 4B1.2(b), we need look no further than . . . Section 1B.11." *Miller*, 480 F. Supp. at 622.

That is the case here. The district court was obligated to apply the version of the Guidelines, and the version of the controlled substance schedules, in effect at the time of Williams's sentencing. *See Bautista*, 2021 WL 769601, at \*4. At that point, possession of hemp was not criminalized, and we presume that Williams's 2015 conviction involved hemp. *See Burris*, 912 F.3d at 406. That conviction therefore "doesn't count." *Garth*, 965 F.3d at 495. The district court erred by incorrectly counting it as a "controlled substance offense," leading to an incorrectly calculated Guidelines range—and thus, a procedurally unreasonable sentence. *See Molina-Martinez*, 136 S. Ct. at 1345; *Gall*, 552 U.S. at 51; *Bautista*, 2021 WL 769601, at \*5.

Errors in calculating Guidelines ranges are typically plain in large part because they affect defendants' fundamental rights and the "fairness, integrity, or public reputation of judicial

---

[5] Multiple other district courts have also followed this interpretation at sentencing. *See, e.g.*, Sent'g Tr. at 18–19, *United States v. Jackson*, No. 1:19-cr-26 (E.D. Tenn. July 28, 2020), ECF No. 53; Sent'g Tr. at 10, *United States v. Santana*, No. 1:18-cr-865 (S.D.N.Y. July 13, 2020), ECF No. 43; Sent'g Tr. at 25, *United States v. Butler*, No. 1:19-cr-177 (S.D.N.Y. Feb. 12, 2020), ECF No. 26; Sent'g Tr. at 19, *United States v. Rollins*, Nos. 1:11-cr-251, 1:19-cr-34 (W.D.N.Y. July 1, 2020), ECF No. 64; Sent'g Tr. at 9, *United States v. Gibson*, No. 1:19-cr-66 (W.D.N.Y. Jan. 30, 2020), ECF No. 53.

proceedings," implicating "[t]he risk of unnecessary deprivation of liberty." *Rosales-Mireles*, 138 S. Ct. at 1907–08; *see also Molina-Martinez*, 136 S. Ct. at 1345. But each prong of plain error review "must be met before a court may consider exercising its discretion to correct the error." *Rosales-Mireles*, 138 S. Ct. at 1904. That includes the second prong: whether the error was "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135; *see also Olano*, 507 U.S. at 734. Here, the points the Government and the concurring opinion raise, and the conclusion that the state of the law applicable to this issue was not necessarily obvious at the time of decision, suggest that the district court's error was subject to reasonable dispute.

Thus, this case presents a situation much like the one we confronted in *Woodruff*, 735 F.3d at 451. We concluded there that while the district court erred in considering a state offense a controlled substance offense, the error was not plain "because the state of the law was both uncertain and not obvious at the time of its decision and at the time of appellate review."[6] *Id.* "[T]he difficulty presented . . . [was] due to the applicable plain error standard of review. Had [the defendant's] attorney preserved an objection [more precisely], we would [have been] determining that 'the sentence was imposed . . . as a result of an incorrect application of the sentencing guidelines,' and remanding the case for resentencing." *Id.* at 452 (Stranch, J., concurring in part and dissenting in part) (seventh alteration in original) (quoting 18 U.S.C. § 3742(f)). That is the

---

[6] The concurring opinion urges disregard of our discussion of the district court's error in considering Williams's 2015 conviction to be a "controlled substance offense." But the Supreme Court has explained that when reviewing for plain error, "[t]he appellate court must consider the error, putative or real, in deciding whether the judgment below should be overturned." *Olano*, 507 U.S. at 732; *see also, e.g.*, *United States v. Houston*, 529 F.3d 743, 754 (6th Cir. 2008) ("The first step in plain-error review is to determine whether the lower court erred."). This is exactly what we did, reasonably and validly, in *Woodruff*. 753 F.3d at 451 ("We conclude that the district court did err in its conclusion that facilitation under Tennessee law is a controlled-substance offense because, in light of our definitive holding, it is not. Its error was not plain, however, because the state of the law was both uncertain and not obvious at the time of its decision and at the time of appellate review."). The Supreme Court reasoned similarly in *Johnson v. United States*, 520 U.S. 461, 467–69 (1997), for instance. So too, here, our decision holds that the district court erred, but that its error was not plain. Some of our cases choose not to decide that issue, *see, e.g.*, *United States v. Clancy*, 979 F.3d 1135, 1140 (6th Cir. 2020), but saying that "we need not" do so, *id.*, is not the same as saying that we must not do so.

case here as well. Because we must apply plain error review, and because not all of its prerequisite prongs are met, we cannot exercise our discretion to correct the district court's error—as we otherwise would, *see Bautista*, 2021 WL 769601, at \*5.

### III. CONCLUSION

Consequently, we **AFFIRM** Williams's sentence.

COOK, Circuit Judge, concurring in the judgment. The district court concluded that Williams unlawfully possessed a firearm "subsequent to sustaining one felony conviction of . . . a controlled substance offense." USSG § 2K2.1(a)(4)(A). I see no procedural error in that determination—plain or otherwise—because Williams's marijuana conviction qualified as a controlled-substance offense at the time he sustained it. *See Mallett v. United States*, 334 F.3d 491, 504 (6th Cir. 2003) (holding that a controlled-substance offense under the Sentencing Guidelines "must be determined as of the date that [the defendant's] guilt . . . was established"). Tennessee's later removal of hemp from its schedule of controlled substances left Williams's 2015 felony conviction intact for sentencing purposes, according to the Supreme Court's guidance. *See McNeill v. United States*, 563 U.S. 816, 820 (2011).

*McNeill* considered the closely related question of "how a federal court should determine the maximum sentence for a prior state drug offense" under the Armed Career Criminal Act. *Id.* at 817. It unanimously held that sentencing courts must look to the maximum sentence "at the time of the defendant's state conviction for that offense"—not at the time of federal sentencing. *Id.* at 825. As the Court explained, "[t]he only way to answer th[e] backward-looking question" of "whether a 'previous convictio[n]' was for a serious drug offense. . . . is to consult the law that applied at the time of that conviction." *Id.* at 820 (third alteration in original).

*McNeill*'s approach controls here. Yes, we apply the Guidelines in effect at the time of Williams's sentencing. USSG § 1B1.11. But those Guidelines, like the ACCA, ask a backward-looking question: did Williams previously "sustain[]" a felony conviction for a controlled-substance offense? USSG § 2K2.1(a)(4)(A). "The only way to answer" that question "is to consult the law that applied at the time of [his] conviction." *McNeill*, 563 U.S. at 820. When we do, the

majority acknowledges, Williams cannot show error because "hemp was criminalized in 2015."[1] Though the majority elsewhere espouses fidelity to *McNeill*, it takes the same approach that the Court repudiated: "look[ing] to 'the nature of the prior state-law crime under federal law at the time of sentencing.'" *See McNeill*, 563 U.S. at 820 (rejecting argument that sentencing courts should "look[] to the state law in effect at the time of the federal sentencing").

Perhaps recognizing this flaw, the majority posits that "[t]here may exist compelling reasons to treat the ACCA differently than the Guidelines." But we have already held that a time-of-conviction rule applies to such Guidelines debates. *Mallett*, 334 F.3d at 504. And as we recently observed, "Armed Career Criminal Act decisions from the Supreme Court" like *McNeill* "are 'fully applicable'" when determining whether a conviction qualifies as a controlled-substance offense under the Guidelines. *United States v. Jackson*, 984 F.3d 507, 511 (6th Cir. 2021) (citation omitted); *see also, e.g.*, *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018) (noting that "we have consistently intermingled our own precedent" in applying the categorical approach). Though the majority suggests distinguishing "less serious prior convictions" from those meriting ACCA sentencing, it offers no precedent supporting that inconsistency.

*McNeill* favorably cites our decision in *Mallett*—further confirming that the same rule controls in both contexts. *See McNeill*, 563 U.S. at 822–23. *Mallett* applied a time-of-conviction rule to the definition of a controlled-substance offense under USSG § 4B1.2(b). 334 F.3d at 504. Two "independent" reasons drove that choice: (1) "the intervening change in Ohio's drug-sentencing law provides no guidance as to how Mallett's offense would currently be classified";

---

[1] This case does not ask whether the time-of-conviction rule applies to retroactive changes in state law. *See McNeill*, 563 U.S. at 825 n.1 (leaving this question open); *Rivera v. United States*, 716 F.3d 685, 689 (2d Cir. 2013) ("Like the law before the Supreme Court, these laws are non-retroactive—and therefore governed by *McNeill*."). Nor does it require answering whether *McNeill* applies when the text of a state statute "remains unchanged and only judicial interpretations of that statute have developed over time." *United States v. Faust*, 869 F.3d 11, 12 (1st Cir. 2017) (Lynch, J., dissenting from the denial of panel reh'g); *see, e.g.*, *United States v. Allen*, 711 F. App'x 781, 784 (6th Cir. 2017) (per curiam).

and (2) "[USSG] § 4B1.2(c) strongly suggests that, under the Sentencing Guidelines, the classification of a controlled-substance offense as a felony should be determined as of the date that the defendant's guilt of that offense was established, not as of the time of his federal sentencing." *Id.* The first reason, the majority notes, matters not here. By departing from the other "independent" reason, however, the majority ignores *Mallett*'s construction of USSG § 4B1.2. *Compare Mallett*, 334 F.3d at 504 (controlled-substance offense "should be determined as of the date that the defendant's guilt of that offense was established"), *with* Maj. Op. at 8 ("[T]he district court should have employed the schedule (federal or state) effective at the time of sentencing."). Today's opinion neither acknowledges nor wrestles with this alternate holding.

If *McNeill* and *Mallett* were not enough, our sister circuits apply a time-of-conviction rule to a host of provisions where other criminal conduct increases a defendant's sentence or Guidelines range. *See, e.g.*, *United States v. Sanders*, 909 F.3d 895, 901 (7th Cir. 2018) (sentencing enhancement under 21 U.S.C. § 841(b)(1)(B)); *United States v. Turlington*, 696 F.3d 425, 427–28 (3d Cir. 2012) (revocation of supervised release under 18 U.S.C. § 3583(e)(3)); *United States v. Mazza*, 503 F. App'x 9, 11 (2d Cir. 2012) (order) (calculation of criminal-history category under USSG § 4A1.1(c)); *United States v. Moss*, 445 F. App'x 632, 635 (4th Cir. 2011) (per curiam) (sentencing enhancement under 18 U.S.C. § 3559(c)(1)); *United States v. Bermudez-Zamora*, 788 F. App'x 523, 524 (9th Cir. 2019) (mem.) (sentencing enhancement under USSG § 2L1.2(b)(3)(A)). The Eighth Circuit even applied *McNeill*'s rule to part of this same Guidelines provision—USSG § 2K2.1. *United States v. Doran*, 978 F.3d 1337, 1339–40 (8th Cir. 2020).

*McNeill*, *Mallett*, and the overwhelming trend of appellate decisions all point to applying sentencing enhancements using a time-of-conviction rule. The majority instead finds persuasive the Ninth Circuit's aberrant conclusion. *See United States v. Bautista*, --- F.3d ----, 2021 WL

769601 (9th Cir. Feb. 26, 2021). To begin, that court revised its opinion twice before it eventually acknowledged *McNeill*.[2] And when it finally did, the court still never consulted the text of USSG § 2K2.1(a)(4)(A) to determine whether it poses a "backward-looking question." *McNeill*, 563 U.S. at 820; *see also Mallett*, 334 F.3d at 504 (citing USSG § 4B1.2(c)). Rather, *Bautista*'s final version resuscitated—and the majority today adopts—arguments *McNeill* unanimously rejected.

In support of its time-of-sentencing rule, for example, *Bautista* appealed to the "present-tense text of 18 U.S.C. § 3553 and U.S.S.G. § 1B1.11." --- F.3d at ----, 2021 WL 769601, at *3. *McNeill* rejected that reasoning. 563 U.S. at 820 ("McNeill argues that the present-tense verb in the phrase 'is prescribed by law' requires federal courts to determine the maximum sentence . . . by looking to the state law in effect at the time of the federal sentencing . . . . That argument overlooks the fact that ACCA is concerned with convictions that have already occurred."); *id.* at 821 ("Despite Congress'[s] use of present tense . . . we have turned to the version of state law that the defendant was actually convicted of violating."). *Bautista* also found it "illogical to conclude that federal sentencing law attaches 'culpability and dangerousness' to an act that, at the time of sentencing, [the legislature] has concluded is *not* culpable and dangerous." --- F.3d at ----, 2021 WL 769601, at *4. *McNeill* drew precisely that conclusion, however, reasoning that culpability and dangerousness attach at the time of conviction. 563 U.S. at 823 ("It cannot be correct that subsequent changes in state law can erase an earlier conviction for ACCA purposes. . . . Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts

---

[2] Without mentioning *McNeill*, the Ninth Circuit initially distinguished its precedents applying a time-of-conviction rule by reasoning that those cases did not arise in "the Armed Career Criminal Act context seen here"—*i.e.*, the exact context in which *McNeill* arose. *Bautista*, 2020 WL 6865043, at *3 (9th Cir. Nov. 23, 2020). The court then amended its opinion to reflect that Bautista's case arose under the Guidelines, not the ACCA. 982 F.3d 563, 565 (9th Cir. 2020). But that second opinion remained incomplete. *See United States v. Johnson*, No. 18-cr-220, 2021 WL 53338, at *26 (D.N.M. Jan. 6, 2021) ("The court does not find *United States v. Bautista* persuasive; the Ninth Circuit's analysis is conclusory."). After the government petitioned for panel rehearing, the court once again amended its opinion to finally cite *McNeill*. *Bautista*, --- F.3d at ----, 2021 WL 769601, at *3–4.

to treat those convictions as if they had simply disappeared."). And though the majority borrows *Bautista*'s statement that "*McNeill* nowhere implies that the court must ignore current federal law and turn to a superseded version of the United States Code," --- F.3d at ----, 2021 WL 769601, at *4, *McNeill* itself ignored current state law and turned to a superseded version of the North Carolina code. 563 U.S. at 818–19, 824. For me, *McNeill* and *Mallett* represent the proper authorities—not *Bautista*.

The majority nonetheless affirms, acknowledging the alleged error was not "clear or obvious." And given that the question properly before this panel asks whether Williams has shown plain error, the majority ought to answer and leave it there, as scores of our cases have done. *See, e.g.*, *United States v. Bonick*, 711 F. App'x 292, 298 (6th Cir. 2017) (Stranch, J.) ("Because any error that [the defendant] can show is not 'obvious or clear' under the law, we need not address the question of whether the court erred in the first place." (citation omitted)); *United States v. Clancy*, 979 F.3d 1135, 1140 (6th Cir. 2020) (explaining that "we need not" decide if district court erred because "[e]ither way, no clear error occurred"); *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) ("[When] plain-error review gives us another, more straightforward way to handle this appeal, we need not address the first step of plain-error review: Did the court err?"). It goes on, however, to engage the question of whether the case presents any error. Courts should recognize the majority's declaration for what it is: unpublished dicta that cannot supplant *Mallett*'s precedential holding or *McNeill*'s unanimous and unmistakable guidance.[3]

---

[3] The majority gives two reasons for labeling its conclusion a holding; neither works. First, the majority writes that "saying that 'we need not do so' . . . is not the same as saying that we must not do so." But courts define dictum as something they "need not" say—not something they "must not" say. *See, e.g.*, *Obiter Dictum*, Black's Law Dictionary (11th ed. 2019) ("A judicial comment made while delivering a judicial opinion . . . that is unnecessary to the decision in the case . . . ."). Second, the majority rationalizes reaching the issue because "[t]he first step in plain-error review is to determine whether the lower court erred." We have already worn that path. *Compare United States v. Jones*, 980 F.3d 1098, 1105–11 (6th Cir. 2020) (relying on a three-step "sequence" to address applicability of USSG

One more thing: when this court floated a time-of-sentencing rule in the ACCA context, *McNeill* unanimously rejected it. *See United States v. Thurman*, 525 F. App'x 401, 404 (6th Cir. 2013) (citing *United States v. Morton*, 17 F.3d 911, 915 (6th Cir. 1994)); *see also United States v. Ellis*, 473 F. App'x 490, 492–94 (6th Cir. 2012). Now the majority favors imposing the same rule in the Guidelines context—a step we refused to take even before *McNeill*. *See Mallett*, 334 F.3d at 504. Because I disagree with the majority eschewing *Mallett* and resurrecting *Morton*'s "rather counterintuitive holding," *Ellis*, 473 F. App'x at 492, I respectfully concur only in the judgment.

---

§ 1B1.13 to compassionate-release motions filed by defendants), *with United States v. Elias*, 984 F.3d 516, 518–19 (6th Cir. 2021) (noting that *Jones* "stat[ed]"—rather than held—that USSG § 1B1.13 does not apply), *and United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021) ("[W]e observe that the district court did not err by skipping right to the § 3553(a) factors and denying defendant's motion. *Elias* settles that matter."). And even if the majority's label withstood scrutiny—it does not—it should go without saying that in light of *Mallett*, today's unpublished opinion holds no sway. *See, e.g.*, *Sun Life Assurance Co. v. Jackson*, 877 F.3d 698, 702 (6th Cir. 2017) ("Unpublished decisions of this Court . . . are non-precedential and bind only the parties to those cases."); 6 Cir. R. 32.1(b) ("A published opinion is overruled only by the court en banc.").